# IN THE SUPREME COURT OF TEXAS

═════════════
No. 09-0079
═════════════

VENKATESWARLU THOTA, M.D. AND NORTH TEXAS
CARDIOLOGY CENTER, PETITIONERS,

v.

MARGARET YOUNG, INDIVIDUALLY, AND AS REPRESENTATIVE
OF THE ESTATE OF WILLIAM R. YOUNG, RESPONDENT

═══════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════════════════════

**Argued November 10, 2011**

JUSTICE GREEN delivered the opinion of the Court.

We have held that reversible error is presumed when a broad-form question submitted to the jury incorporates multiple theories of liability and one or more of those theories is invalid, *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 388 (Tex. 2000), or when the broad-form question commingles damage elements that are unsupported by legally sufficient evidence, *Harris Cnty. v. Smith*, 96 S.W.3d 230, 233–34 (Tex. 2002). We have not, however, addressed whether that presumed harm analysis applies to a broad-form submission in a single-theory-of-liability case when the negligence charge includes both an improper defensive theory of contributory negligence and an improper inferential rebuttal instruction. For the reasons explained below, we hold that it does not,

and that meaningful appellate review is provided through a traditional harm analysis. Inasmuch as the court of appeals ruled otherwise, we reverse its judgment and remand the case to that court for further consideration consistent with this opinion.

## I. Background

William R. Young (Ronnie) died of leukemia on March 10, 2005, at the age of fifty-seven. Prior to his death, Ronnie suffered from several physical ailments, including a rare blood disorder called polycythemia vera, coronary artery disease, hypertension, and angina. In late 2001, Ronnie visited Venkateswarlu Thota, M.D., a cardiologist at the North Texas Cardiology Center (NTCC), complaining of chest pains. After medications failed, Dr. Thota recommended that Ronnie undergo a coronary angiography—a test using dye and x-rays to observe how blood flows through the heart—to evaluate Ronnie's heart condition. Dr. Thota performed the cardiac catheterization procedure—insertion and threading of a thin tube into the coronary arteries, through which dye is released into the bloodstream—on the morning of March 4, 2002, at the United Regional Health Care System in Wichita Falls, Texas. Ronnie was released from the hospital at approximately 2:30 p.m. that afternoon and given routine instructions to call if he experienced any problems. Ronnie's wife, Margaret, drove him home after the catheterization procedure.

Later that evening, Ronnie experienced abdominal pain. Ultimately, Ronnie's condition worsened, and he fell from his reclining chair around 11:30 p.m. Margaret called 911, and Ronnie returned by ambulance to the hospital's emergency room at approximately 1:15 a.m. Dr. Thota's partner, Siriam Sudarshan, M.D., saw Ronnie in the emergency room. An abdominal CT scan showed bleeding from the puncture site—where the needle and catheter were inserted during the

2

catheterization procedure—at Ronnie's right external iliac artery, as well as a large hematoma. Because of those results, Dr. Sudarshan consulted Olyn Walker, M.D., a vascular surgeon in Wichita Falls, concerning Ronnie's condition. Soon thereafter, Dr. Walker performed an emergency surgery to repair a tear in Ronnie's right external iliac artery, allegedly caused by the catheterization procedure. During the emergency surgery, Dr. Walker discovered a large hematoma from severe bleeding in Ronnie's peritoneal cavity. After repairing the tear in the iliac artery and draining the retroperitoneal hematoma, the emergency care providers placed Ronnie on a ventilator.

Ronnie remained on the ventilator for several months and required additional procedures to treat injuries resulting from the severe bleed. Ronnie suffered acute renal failure that required dialysis, had multiple blood transfusions, underwent a splenectomy, and had his gallbladder removed because it had turned gangrenous as a result of ischemia—the lack of blood supply—caused from the bleed. Ronnie ultimately lost his vision in one eye and suffered numerous strokes and blood clots, all allegedly as a result of the catheterization. Later, Ronnie was transferred from the Wichita Falls hospital to Baylor University Medical Center in Dallas to receive treatment for various other ailments. After several months of additional treatment, Ronnie was released from the hospital in August 2002. Nearly three years after the catheterization procedure, Ronnie died of leukemia, which had developed as a complication of his prolonged struggle with polycythemia vera.

## A. The Medical-Malpractice Lawsuit

Following Ronnie's death, Margaret brought this suit both individually and on behalf of Ronnie's estate (collectively, Young) against Dr. Thota and NTCC (collectively, Dr. Thota).[1] Young alleged that Dr. Thota was negligent by: (1) failing to obtain Ronnie's complete medical history; (2) failing to heed Ronnie's underlying medical conditions, which may have exacerbated his risk of potential complications; (3) failing to properly locate Ronnie's femoral artery during the catheterization procedure and lacerating his right iliac artery instead; (4) failing to discover the iliac artery tear before discharging Ronnie from the hospital; and (5) failing to diagnose and treat the artery tear. Young sought damages for Ronnie's pain and suffering and mental anguish, medical expenses, physical disfigurement, and lost earnings. Additionally, Young sought damages for Margaret's loss of consortium and loss of household services.

In his answer, Dr. Thota generally denied all of Young's claims and, alternatively, claimed that Ronnie's injuries were the result of an unavoidable accident, a new and independent cause, or pre-existing or subsequent medical conditions. Dr. Thota's answer also contended that Ronnie's injuries were partially the result of Ronnie's own negligence and included a counterclaim against Young for contribution due to Young's alleged failure to mitigate his damages.

The case proceeded to a week-long jury trial. At the charge conference, both parties raised several objections and argued over the proper questions and instructions that the trial court should submit to the jury. Young's theory of liability rested on the claim that Dr. Thota breached the

---

[1] Young alleged that NTCC was liable for Ronnie's injuries on the basis of respondeat superior.

4

standard of care by puncturing Ronnie's iliac artery instead of the femoral artery, resulting in the extensive bleeding and concomitant injuries that Ronnie suffered. In contrast, Dr. Thota's theory of the case considered Ronnie's injury to be the extensive bleed. Accordingly, Dr. Thota alleged that Ronnie was negligent in failing to return to the hospital at the first sign of pain, which would have substantially alleviated Ronnie's resulting health problems. Dr. Thota averred that the negligence, if any, resulted from the concurrent actions of both parties, which made this a contributory negligence issue rather than a mitigation-of-damages issue.

At the charge conference, Young objected to the inclusion of the definitions of negligence, ordinary care, and proximate cause in reference to Ronnie, arguing that contributory negligence was not supported by the evidence and that any delay on Ronnie's part in seeking medical treatment was a mitigation-of-damages issue. The trial court overruled Young's objection and included a question on Ronnie's contributory negligence in the charge. Additionally, the trial court overruled Young's objections to the inclusion of instructions on new and independent cause and unavoidable accident. Neither party advised the trial court that the charge might contain a *Casteel* problem, which arises when a broad-form charge mixes valid and invalid theories of liability, making it impossible for the appellate courts to determine if the jury answered the liability question based on an invalid theory, nor did either party request separate submissions for the negligence of Dr. Thota and Young. *See Casteel*, 22 S.W.3d at 388–89. Instead, Young's objections rested on the argument that there was no evidence to support the inclusion of the disputed jury charge items in the broad-form question.

5

The charge included one broad-form submission as to the single theory of liability—negligence—and additional questions regarding apportionment and calculation of damages. Question 1 addressed both parties' liability and stated:

> Did the negligence, if any, of those named below, proximately cause the injury in question, if any?
>
> "Negligence," when used with respect to the conduct of Venkat Thota, M.D., means failure to use ordinary care, that is, failing to do that which a cardiologist of ordinary prudence would have done under the same or similar circumstances or doing that which a cardiologist of ordinary prudence would not have done under the same or similar circumstances.
>
> "Ordinary care," when used with respect to the conduct of Venkat Thota, M.D., means that degree of care that a cardiologist of ordinary prudence would use under the same or similar circumstances.
>
> "Proximate Cause," when used with respect to the conduct of Venkat Thota, M.D., means that cause which, in a natural and continuous sequence unbroken by any new and independent cause, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a cardiologist using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.
>
> "New and independent cause," when used with respect to the conduct of Venkat Thota, M.D., means the act or omission of a separate and independent agency, not reasonably foreseeable by a cardiologist exercising ordinary care, that destroys the causal connection, if any, between the act or omission inquired about and the injury in question and thereby becomes the immediate cause of such injury.
>
> "Negligence," when used with respect to the conduct of [Ronnie] Young means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

6

"Ordinary care," when used with respect to the conduct of [Ronnie] Young means that degree of care that a person of ordinary prudence would use under the same or similar circumstances.

"Proximate cause," when used with respect to the conduct of [Ronnie] Young means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be a proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

An injury may be an "unavoidable accident," that is, an event not proximately caused by the negligence of any party to it.

Answer "Yes" or "No".

Venkat Thota, M.D.: _____

[Ronnie] Young: _____

If you have answered "Yes" to Question 1 for both of those named in Question 1, then answer Question 2.  Otherwise do not answer Question 2.

If you have answered "Yes" to Question 1 only as to Mr. Young, then do not answer Questions 2, 3, or 4.

If you have answered "Yes" to Question 1 only as to Dr. Thota, then answer Questions 3 and 4.

Question 2 conditionally asked about Dr. Thota's and Ronnie's comparative negligence, and Questions 3 and 4 concerned the amount of damages owed for Ronnie's and Margaret's injuries.

The jury answered Question 1 with a "No" as to Dr. Thota's negligence and a "Yes" as to Ronnie's negligence.  On July 18, 2005, the trial court entered final judgment that Young take nothing.  Young filed a motion for new trial, arguing that the trial court had erred in overruling Young's objections to the jury charge and that the jury's findings were against the great weight and

7

preponderance of the evidence or based on insufficient evidence. The trial court denied Young's motion for new trial, and Young timely appealed.

## B. Appellate Court Proceedings

On appeal, Young raised the same issues presented in the motion for new trial. Specifically, Young challenged the trial court's judgment for the following reasons: (1) the jury's finding of no negligence as to Dr. Thota was against the great weight and preponderance of the evidence and was manifestly unjust and/or the opposite answer was conclusively proven as a matter of law; (2) the evidence was insufficient to support the jury's findings as to Ronnie's contributory negligence, and the trial court erred by overruling Young's objection to the inclusion of contributory negligence in the jury charge; and (3) the trial court erred in overruling Young's objections and submitting jury instructions on unavoidable accident and new and independent cause.

The court of appeals held that the trial court's inclusion of the question on Ronnie's contributory negligence and the new and independent cause instruction in the jury charge was an abuse of discretion and constituted harmful error; accordingly, it reversed the trial court's judgment and remanded the case for a new trial. 271 S.W.3d 822, 841 (Tex. App.—Fort Worth 2008, pet. granted). The appellate court found that the "injury in question" was the tear in Ronnie's iliac artery and, contrary to Dr. Thota's arguments, not the extensive bleed. *Id.* at 834–35. The court of appeals compared the parties' theories of liability and concluded that Dr. Thota's premise for Ronnie's contributory negligence was "based upon Ronnie's alleged negligence occurring *after* the tear, not Ronnie's negligence in *causing* the tear." *Id.* at 833. The court recognized that contributory negligence must have a causal connection with the original accident, while a failure to mitigate

8

damages "arises from an injured party's duty to act reasonably in reducing his damages." *Id.* (citing *Hygeia Dairy Co. v. Gonzalez*, 994 S.W.2d 220, 226 (Tex. App.—San Antonio 1999, no pet.)). Because it found that Dr. Thota's theory pointed only to Young's "*subsequent* negligence that might have increased his damages as opposed to Dr. Thota's original negligence," the court concluded "that Ronnie's negligence, if any, only increased the damages he suffered after the catheterization or tear, as opposed to causing the 'injury,' 'accident,' or 'occurrence' itself." *Id.*

The appellate court then considered whether the disputed inferential rebuttal instructions on new and independent cause and unavoidable accident were proper. *Id.* at 836–39. Finding that Dr. Thota presented some evidence that the tear in Ronnie's artery could have been a natural result of Ronnie's then-existing illnesses or an unexpected catastrophe, the court of appeals held that the trial court did not abuse its discretion in submitting the unavoidable accident instruction.[2] *Id.* at 837. The court concluded that Ronnie's massive bleed and resulting injuries were foreseeable risks in the catheterization procedure and held that the trial court abused its discretion by submitting the new and independent cause instruction in connection with Dr. Thota's negligence. *Id.* at 838.

After holding that the trial court erred in submitting the question of Ronnie's contributory negligence and the new and independent cause instruction as to Dr. Thota, the court of appeals considered which level of harm analysis applied. *Id.* at 839. The court, sua sponte, held that Young's objections to these specific aspects of the charge invoked *Casteel*'s presumed harm analysis because the improperly submitted broad-form question commingled valid and invalid theories of

---

[2] In this Court, the parties do not contest the court of appeals' holding as to the unavoidable accident instruction. Therefore, our opinion focuses solely on the disputed charge issues concerning the inclusion of Ronnie's contributory negligence and the instruction on new and independent cause.

9

liability. *Id.* at 836 (citing *Casteel*, 22 S.W.3d at 388–89).[3] The court acknowledged our opinion in *Bed, Bath & Beyond, Inc. v. Urista*, 211 S.W.3d 753 (2006), which held that *Casteel*'s presumed harm analysis does not apply to broad-form questions based on a single theory of liability that are submitted with improper inferential rebuttal instructions, *id.* at 757, but distinguished Young's situation because "the jury was not only given an erroneous defensive instruction on new and independent cause that benefitted only Dr. Thota but also an erroneous jury question on liability—Ronnie's contributory negligence—a theory not supported by the evidence." 271 S.W.3d at 839. Concluding that *Casteel*'s presumed harm analysis applied, the court of appeals reasoned:

> We simply cannot determine, on this evidence, whether the jury properly found Dr. Thota not negligent, properly found that his negligence was excused based upon the unavoidable accident instruction, or improperly found that his negligence was excused based upon the new and independent cause instruction alone or combined with its improper finding of Ronnie's negligence.

---

[3] As mentioned by Young's counsel at oral argument, at least one other appellate court has followed this approach and held that a broad-form charge that includes separate blanks for multiple parties' fault, under a single theory of liability, presents a *Casteel* issue. *See Block v. Mora*, 314 S.W.3d 440, 450 (Tex. App.—Amarillo 2009, pet. dism'd by agr.). In *Block*, Question 1 of the jury charge asked: "Did the negligence, if any, of those named below proximately cause the injuries, if any, to [the plaintiff]?" *Id.* at 444. Question 1 included two separate answer blanks next to the names of the plaintiff and the defendant. *Id.* The jury answered "Yes" to the plaintiff's negligence and "No" to the defendant's negligence. *Id.* On appeal, the plaintiff complained that the evidence supported judgment in his favor because the defendant's negligence was established as a matter of law. *Id.* The plaintiff also alleged that there was no evidence of his contributory negligence nor any evidence that he had proximately caused the accident or his injuries, and he claimed that the trial court erred in submitting his negligence to the jury. *Id.* On appeal, the court of appeals held that it was error to submit the invalid theory of the plaintiff's contributory negligence to the jury. *Id.* at 450. Like the court of appeals in *Thota*, the *Block* court held that because "the trial court submitted two competing theories of liability within one broad-form liability question that asked whether the negligence of the two parties involved in the accident caused the plaintiff's injuries," it could not "determine whether the jury truly found that [the defendant] was not negligent in causing the accident or [that the plaintiff] was solely negligent in causing his injuries (both of which findings would be against the great weight and preponderance of the evidence)." *Id.* The court cited to *Casteel*'s presumed harm analysis, but held, under the traditional harmless error analysis that the charge error "likely caused the rendition of an improper judgment." *Id.*; *see* Tex. R. App. P. 44.1.

10

*Id.* Specifically, the court held that the charge commingled Dr. Thota's improper theory of liability (the extensive bleeding) with Young's proper theory of liability (the torn artery) and, consequently, prevented the appellate court "from being able to determine whether the jury's finding of no liability as to Dr. Thota was a finding of no negligence on his part, an erroneous finding of contributory negligence on Ronnie's part, or an erroneous finding of new and independent cause." *Id.* at 841. The court concluded: "Because these instructions likely caused rendition of an improper judgment or, at least, prevented [Young] from properly presenting her case on appeal, we conclude that such error was harmful." *Id.*

## C. Dr. Thota's Petition for Review

Dr. Thota petitioned our Court for review, and we granted his petition on rehearing. 54 Tex. Sup. Ct. J. 682 (Mar. 18, 2011). Dr. Thota argues that the court of appeals erred in holding that the trial court's inclusion of Ronnie's contributory negligence and the inferential rebuttal instruction constituted an abuse of discretion. Dr. Thota claims that even if there were error in the jury charge, it was harmless, and *Casteel*'s presumed harm analysis does not apply. Furthermore, Dr. Thota claims that the court of appeals improperly reversed the trial court's judgment based on unassigned error because Young neither raised a *Casteel* issue before the court of appeals nor made a timely or specific objection before the trial court to assert that the submission of Young's contributory negligence or the inferential rebuttal instruction would improperly commingle valid and invalid theories of liability and, therefore, prevent the appellate court from conducting a meaningful appellate review. Finally, Dr. Thota claims that the appellate court misapplied our holding in *Elbaor v. Smith*, 845 S.W.2d 240 (Tex. 1992), by holding that the trial court abused its discretion by

11

submitting a question on Ronnie's contributory negligence instead of an instruction on Ronnie's duty to mitigate his damages.

Young counters that the trial court's submission of Ronnie's contributory negligence and the inferential rebuttal instruction on new and independent cause was an abuse of discretion. According to Young, the court of appeals correctly interpreted *Elbaor* because Ronnie could not have been negligent in causing the tear to his iliac artery and any fault on Ronnie's part should have been submitted only through an instruction on Ronnie's failure to mitigate his damages. *See Elbaor*, 845 S.W.2d at 244–45. Young asserts that *Casteel*'s presumed harm analysis applies because the submitted jury charge was based on one valid and one invalid theory of liability, which obviously confused the jury to such a degree that an appellate court cannot determine whether the jury based its decision on the valid or invalid theory. Young claims that direct mention of *Casteel* to the trial court was not required to preserve the *Casteel* error, and Young's timely and specific no-evidence objections to the charge errors were sufficient to inform the trial court of the *Casteel* problem. Alternatively, Young claims that the trial court's judgment must be reversed even under the traditional harmless error analysis.

## II. Harm Analysis

Assuming, but not deciding, that it was error for the trial court to submit the question on Ronnie's contributory negligence and the instruction on new and independent cause, we consider whether these charge issues constituted harmful error. *See, e.g.*, TEX. R. APP. P. 61.1; *Urista*, 211 S.W.3d at 756. We first address whether the court of appeals correctly applied *Casteel*'s presumed harm analysis to the contested jury charge. We hold that it did not. For reasons stated below, we

12

further hold that even if the submission of the contested charge issues were an abuse of discretion, a review of the entire record provides no clear indication that the contested charge issues probably caused the rendition of an improper judgment and, therefore, we must conclude that the trial court's submission was harmless. *See* TEX. R. APP. P. 44.1(a), 61.1(a).

## A. General Law

"We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard of review." *In re V.L.K.*, 24 S.W.3d 338, 341 (Tex. 2000). The trial court has considerable discretion to determine proper jury instructions, and "[i]f an instruction might aid the jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper." *La.-Pac. Corp. v. Knighten*, 976 S.W.2d 674, 676 (Tex. 1998). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009). An appellate court will not reverse a judgment for a charge error unless that error was harmful because it "probably caused the rendition of an improper judgment" or "probably prevented the petitioner from properly presenting the case to the appellate courts." TEX. R. APP. P. 61.1; *see* TEX. R. APP. P. 44.1(a).[4] "Charge error is generally considered harmful if it relates to a contested, critical issue." *Hawley*, 284 S.W.3d at 856; *see also Quantum*

---

[4] Rule 61.1 is the Supreme Court version of the harmful error rule. *See* TEX. R. APP. P. 61.1. Similarly, the appellate court provision, Rule 44.1(a), states:

> No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of: (1) probably caused the rendition of an improper judgment; or (2) probably prevented the appellant from properly presenting the case to the court of appeals.

TEX. R. APP. P. 44.1(a).

13

*Chem. Corp. v. Toennies*, 47 S.W.3d 473, 480 (Tex. 2001) ("An improper instruction is especially likely to cause an unfair trial when the trial is contested and the evidence sharply conflicting . . . .")

## B. *Casteel* and Its Progeny

*Casteel* involved a dispute between an insurance agent and the insurer. 22 S.W.3d at 381. In *Casteel*, the trial court submitted a single broad-form question on the issue of the insurer's liability to the agent, which included thirteen independent grounds for liability. *Id.* at 387. We determined that five of the thirteen independent grounds for liability did not apply and held that the trial court erred by submitting the invalid grounds for liability in the charge. *Id.* We then considered whether the charge error was harmful. *Id.* Because the single broad-form charge mixed valid and invalid theories of liability, we held that the charge error constituted harmful error, explaining:

> It is fundamental to our system of justice that parties have the right to be judged by a jury properly instructed in the law. Yet, when a jury bases a finding of liability on a single broad-form question that commingles invalid theories of liability with valid theories, the appellate court is often unable to determine the effect of this error. The best the court can do is determine that some evidence *could* have supported the jury's conclusion on a legally valid theory. To hold this error harmless would allow a defendant to be held liable without a judicial determination that a factfinder actually found that the defendant *should* be held liable on proper, legal grounds.

*Id.* at 388. Therefore, we held: "When a single broad-form liability question erroneously commingles valid and invalid liability theories and the appellant's objection is timely and specific, the error is harmful when it cannot be determined whether the improperly submitted theories formed the sole basis for the jury's finding." *Id.* at 389.

Following *Casteel*, we have clarified the extent of its presumed harm analysis on several occasions. *See Urista*, 211 S.W.3d 753; *Romero v. KPH Consolidated, Inc.*, 166 S.W.3d 212 (Tex.

14

2006); *Harris Cnty.*, 96 S.W.3d 230. In *Harris County*, we extended *Casteel*'s presumed harm analysis to a broad-form question that commingled valid and invalid elements of damages for which there was no evidence. 96 S.W.3d at 233–34. In *Romero*, we applied *Casteel*'s presumed harm analysis to a single broad-form proportionate responsibility question that included a factually-unsupported malicious credentialing claim. 166 S.W.3d at 227–28 (noting that "unless the appellate court is 'reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it,' the error is reversible" (citations omitted)). Later, in *Urista*, we declined to extend *Casteel*'s presumed harm analysis to the trial court's submission of an erroneous inferential rebuttal instruction. 211 S.W.3d at 756–57. In *Urista*, we explained:

> We specifically limited our holdings in *Casteel* and *Harris County* to submission of a broad-form question incorporating multiple theories of liability or multiple damage elements. We have never extended a presumed harm rule to instructions on defensive theories such as unavoidable accident, and we decline to do so now. . . . When, as here, the broad-form questions submitted a single liability theory (negligence) to the jury, *Casteel*'s multiple-liability-theory analysis does not apply. Moreover, when a defensive theory is submitted through an inferential rebuttal instruction, *Casteel*'s solution of departing from broad-form submission and instead employing granulated submission cannot apply. Unlike alternate theories of liability and damage elements, inferential rebuttal issues cannot be submitted in the jury charge as separate questions and instead must be presented through jury instructions. Therefore, although harm can be presumed when meaningful appellate review is precluded because valid and invalid liability theories or damage elements are commingled, we are not persuaded that harm must likewise be presumed when proper jury questions are submitted along with improper inferential rebuttal instructions.

*Id.* (citations omitted). *Cf. Hawley*, 284 S.W.3d at 865 (applying Rule 61.1(b) in a non-*Casteel* context where the trial court omitted the defendant's proposed instruction in a single-theory-of-liability case, thereby allowing the jury to potentially find the defendant liable on an invalid basis).

15

Because we held that *Casteel*'s presumed harm analysis did not apply to the inferential rebuttal question in *Urista*, we applied the traditional harmless error analysis, which considers whether the instruction "probably caused the rendition of an improper judgment." 211 S.W.3d at 757; *see* TEX. R. APP. P. 61.1(a); *see also Reinhart v. Young*, 906 S.W.2d 471, 473 (Tex. 1995) ("Error in the jury charge is reversible only if, in the light of the entire record, it was reasonably calculated to and probably did cause the rendition of an improper judgment."). After reviewing the entire record, we concluded in *Urista* that there was some evidence the plaintiff failed to meet his burden of proof and therefore held that the unavoidable accident instruction did not probably cause the jury to render an improper verdict. 211 S.W.3d at 758–59.

Notwithstanding *Casteel*'s presumed harm analysis in situations that erroneously commingle valid and invalid theories of liability, we have repeatedly reaffirmed our longstanding, fundamental commitment to broad-form submission. *See, e.g.*, *Harris Cnty.*, 96 S.W.3d at 235–36. We first expressed our preference for broad-form practice in 1973 and, after issuing multiple opinions in which we supported broad-form submission, we modified Rule 277 of the Texas Rules of Civil Procedure in 1988 to more expressly mandate the use of broad-form submission. *See id.*; *see also Lemoz v. Montez*, 680 S.W.2d 798, 801 (Tex. 1984) (explaining our progression from separate, granulated charge issues to the broad-form charge). *See generally* William G. "Bud" Arnot, III & David Fowler Johnson, *Current Trends in Texas Charge Practice: Preservation of Error and Broad-Form Use*, 38 ST. MARY'S L.J. 371, 416–40 (2007) (providing a more detailed history of Texas jury charge practice); William L. Davis, *Tools of Submission: The Weakening Broad-Form "Mandate" in Texas and the Roles of Jury and Judge*, 24 REV. LITIG. 57 (2005) (same). Since 1988,

Rule 277 has stated, in pertinent part: "In all jury cases the court shall, whenever feasible, submit the cause upon broad-form questions." TEX. R. CIV. P. 277. *Casteel* and its progeny denote situations where broad-form submission may be unfeasible. *See, e.g.*, *Casteel*, 22 S.W.3d at 389. But "whenever feasible," broad-form submission should be the norm. *See* TEX. R. CIV. P. 277; *Harris Cnty.*, 96 S.W.3d at 235–36; *see also Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (interpreting "whenever feasible" to mandate broad-form submission "in any or every instance in which it is capable of being accomplished").

### C. Preservation of Error

We first address Dr. Thota's argument that the court of appeals improperly reversed the judgment of the trial court based on unassigned and unpreserved error. Our procedural rules govern the preservation requirements for raising a jury charge complaint on appeal and require the complaining party to make an objection before the trial court. TEX. R. CIV. P. 274; TEX. R. APP. P. 33.1. Rule 274 requires that an objecting party "must point out distinctly the objectionable matter and the grounds of the objection," and states that "[a]ny complaint as to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections." TEX. R. CIV. P. 274. Additionally, to preserve error for appellate review, the rules generally require the complaining party to (1) make a timely objection to the trial court that "state[s] the grounds for the ruling that the complaining party [seeks] from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context," and (2) obtain a ruling. TEX. R. APP. P. 33.1. As we stated twenty years ago, the procedural requirements for determining whether a party has preserved error in the

jury charge are explained by one basic test: "whether the party made the trial court aware of the complaint, timely and plainly, and obtained a ruling." *State Dep't of Highways v. Payne*, 838 S.W.2d 235, 241 (Tex. 1992).

Although Young made a timely and specific objection at the charge conference to the inclusion of the question on Ronnie's contributory negligence and the instruction on new and independent cause, Dr. Thota argues that because Young failed to specifically state that these charge issues raised a *Casteel* problem or notify either the trial or appellate court that the charge would prevent Young from obtaining meaningful appellate review, Young waived the right to invoke *Casteel* and the court of appeals improperly reversed the trial court on unassigned error. In essence, Dr. Thota argues that because Young did not cite *Casteel* or specifically object to the form of the charge question, Young waived any benefit of the presumed harm analysis.

Contrary to Dr. Thota's narrow and technical interpretation of our preservation of error requirements, we have never held that a no-evidence objection in this context is insufficient to preserve a broad-form complaint on appeal. *See, e.g.*, *Romero*, 166 S.W.3d at 229; *Harris Cnty.*, 96 S.W.3d at 236; *Casteel*, 22 S.W.3d at 387, 389. Moreover, we have long favored a common sense application of our procedural rules that serves the purpose of the rules, rather than a technical application that rigidly promotes form over substance. *See Alaniz v. Jones & Neuse, Inc.*, 907 S.W.2d 450, 451–52 (Tex. 1995) (per curiam) (citing *Payne*, 838 S.W.2d at 241) ("While *Payne* does not revise the requirements of the rules of procedure regarding the jury charge, it does mandate that those requirements be applied in a common sense manner to serve the purposes of the rules, rather than in a technical manner which defeats them.").

18

In addition, Dr. Thota's reliance on our opinions in *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003), and *In re B.L.D.*, 113 S.W.3d 340, 349–50 (Tex. 2003), to support his contention that Young failed to preserve any complaint regarding the charge's broad-form submission is misplaced. Although in those cases we did hold that complaints of harmful charge error were not preserved, those cases are distinguishable from this case because in both *A.V.* and *B.L.D.*, the complaining party raised no objections to items included in the broad-form charge. *See A.V.*, 113 S.W.3d at 357; *B.L.D.*, 113 S.W.3d at 349. Moreover, the charge complaint at issue in those parental-rights-termination cases was that separate statutory grounds for terminating the parents' parental rights should not have been submitted within a single broad-form question. *See A.V.*, 113 S.W.3d at 357; *B.L.D.*, 113 S.W.3d at 349. The basis for the parents' complaints was not that the charge should not include the termination grounds at all, but that it was error for the trial court to submit them in a broad-form question. *See A.V.*, 113 S.W.3d at 357; *B.L.D.*, 113 S.W.3d at 349. In those circumstances, it was necessary for the complaining party to make a specific objection to the form of the charge to put the trial court on notice of the alleged error and afford the court an opportunity to correct the error. *See A.V.*, 113 S.W.3d at 363 (holding that the parent failed to preserve the issue for appellate review because he did not make "a specific objection to the charge to put [the] trial court on notice to submit a granulated question to the jury"); *B.L.D.*, 113 S.W.3d at 349; TEX. R. APP. P. 33.1. *Cf. Keetch v. Kroger Co.*, 845 S.W.2d 262, 267 (Tex. 1992) (stating that "[e]rror in the charge must be preserved by distinctly designating the error and the grounds for the objection" and holding that error was not preserved when the complaint of the trial court's failure to submit in broad form was first raised in this Court). In this case, a separate objection to the form of the charge

question was not necessary to inform the trial court of Young's complaint—that the inclusion of Ronnie's contributory negligence and the instruction on new and independent cause should not be submitted to the jury. A granulated submission would have cured the alleged charge defect in *A.V.* and *B.L.D.*, but here, even if the trial court submitted the issue of Ronnie's contributory negligence in a separate question, this would not have cured Young's no-evidence objection.

In every case in which we have considered *Casteel*'s presumed harm analysis, including *Casteel* itself, we have emphasized the need for the complaining party to make a timely and specific objection to preserve complaints of error in broad-form submission. *See, e.g.*, *Casteel*, 22 S.W.3d at 387–89; *Romero*, 166 S.W.3d at 229. As we stated in *Harris County*, under our preservation rules: "A timely objection, plainly informing the court that a specific element . . . should not be included in a broad-form question because there is *no evidence to support its submission*, therefore preserves the error for appellate review." 96 S.W.3d at 236 (emphasis added). Again in *A.V.* and *B.L.D.*, we quoted that statement from *Harris County* and held that without some objection to the charge, claiming the submitted theory had no evidentiary support, or an objection to the form of the charge, any complaint of charge error was not preserved for review by the court of appeals. *See A.V.*, 113 S.W.3d at 362–63; *B.L.D.*, 113 S.W.3d at 349–50. In contrast to *A.V.* and *B.L.D.*, Young made a specific and timely no-evidence objection to the charge question on Ronnie's contributory negligence and also specifically objected to the disputed instruction on new and independent cause. In addition to Young's timely and specific objections at the charge conference, Young submitted a proposed charge to the trial court, which omitted any inclusion of Ronnie's contributory negligence and the new and independent cause instruction and presented the charge according to Young's theory

20

of the case. This was sufficient to place the trial court on notice that Young believed the evidence did not support an inclusion of Ronnie's contributory negligence or instruction on new and independent cause, and our procedural rules require nothing more.

By making timely and specific objections that there was no evidence to support the disputed items submitted in the broad-form charge and raising these issues for the court of appeals to consider, Young properly preserved these issues for appellate review; Young did not have to cite or reference *Casteel* specifically to preserve the right for the appellate court to apply the presumed harm analysis, if applicable, to the disputed charge issues. *See, e.g.*, *Harris Cnty.*, 96 S.W.3d at 236; *Casteel*, 22 S.W.3d at 387–88, 390. *Cf. Pat Baker Co., Inc. v. Wilson*, 971 S.W.2d 447, 450 (Tex. 1998) (per curiam) ("It is axiomatic that an appellate court cannot reverse a trial court's judgment absent properly assigned error."). With the charge issues properly preserved and contested on appeal, an appellate court reviews the basis of the complaints and reverses only if the alleged charge errors were harmful. TEX. R. APP. P. 44.1(a), 61.1. Because Young properly preserved error as to the disputed charge issues, we must consider whether the appellate court properly applied the correct harm analysis. *See Urista*, 211 S.W.3d at 757.

**D. Application of Harm Analysis Law**

Young alleges, and the court of appeals agreed, that the trial court erred by submitting a jury question on Dr. Thota's theory of the case—Ronnie's contributory negligence. Even if Young is correct, *Casteel*'s presumed harm analysis does not apply because the separate answer blanks allow us to determine whether the jury found Dr. Thota negligent. Unlike *Casteel*, which involved thirteen independent grounds for liability with one answer blank for the defendant's liability, here, the charge

21

provided two separate blanks for the jury to answer the single-theory-of-liability question. *See Casteel*, 22 S.W.3d at 387. The charge mirrors the *Texas Pattern Jury Charges*'s longstanding use of separate blanks when multiple parties' negligence are in issue. *See* Comm. On Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: General Negligence & Intentional Personal Torts* PJC 4.1 (2010). The only theory of liability asserted against Dr. Thota was negligence, and the jury's findings on that theory are clear: Dr. Thota was not negligent. We hold that this charge question simply does not raise a *Casteel* issue, and the court of appeals erred in applying *Casteel*'s presumed harm analysis.

Additionally, we hold that the new and independent cause instruction fails to present a *Casteel* situation. *See Urista*, 211 S.W.3d at 756–57. In concluding that the new and independent cause instruction constituted harmful error, the appellate court reasoned:

> Here, however, the jury was not only given an erroneous defensive instruction on new and independent cause that benefitted only Dr. Thota but also an erroneous jury question on liability—Ronnie's contributory negligence—a theory not supported by the evidence. So, we should not be limited to *Urista*'s traditional harm analysis when trying to determine the impact of the improperly submitted instruction on new and independent cause when combined with the improperly submitted question of Ronnie's contributory negligence. We simply cannot determine, on this evidence, whether the jury properly found Dr. Thota not negligent, properly found that his negligence was excused based upon the unavoidable accident instruction, or improperly found that his negligence was excused based upon the new and independent cause instruction alone or combined with its improper finding of Ronnie's negligence.

271 S.W.3d at 839. And in response to the dissent, the majority added:

> It is the combination of these two incorrect theories that prevents us from being able to determine whether the jury's finding of no liability as to Dr. Thota was a finding of no negligence on his part, an erroneous finding of contributory negligence on Ronnie's part, or an erroneous finding of new and independent cause.

Importantly, we are not trying to extend *Casteel*'s presumed harm analysis to defensive theories; we are applying it to a single broad-form question that erroneously includes two different theories of liability. This error is only exacerbated by the erroneous defensive instruction of new and independent cause.

*Id.* at 841.

We disagree with the court of appeals' interpretation of our holding in *Urista* and hold that, even assuming the new and independent cause instruction in this charge constituted error, it does not raise a *Casteel* issue. Like *Urista*, this case involves a single liability theory—negligence—so *Casteel*'s multiple-liability-theory analysis does not apply. *See* 211 S.W.3d at 756–57. Moreover, as we noted in *Urista*, "when a defensive theory is submitted through an inferential rebuttal instruction, *Casteel*'s solution of departing from broad-form submission and instead employing granulated submission cannot apply." *Id.* at 757. Inferential rebuttal issues are distinct from theories of liability and damage elements because they "cannot be submitted in the jury charge as separate questions and instead must be presented through jury instructions." *Id.* Like the inferential rebuttal instruction on unavoidable accident in *Urista*, the new and independent cause instruction "was given in reference to the causation element of the plaintiff's negligence claim." *Id.* at 756–57. While appellate courts may presume harm when meaningful appellate review is precluded because the submitted charge mixes valid and invalid theories of liability or commingles improper damage elements, the courts do not presume harm because of improper inferential rebuttal instructions on defensive theories. *See id.* at 757. Therefore, assuming without deciding that the submission of the new and independent cause instruction was an abuse of discretion, we hold that this charge error does not present a *Casteel* problem.

23

Even if the inclusion of a jury question regarding a party's contributory negligence and an inferential rebuttal instruction were erroneous in a single-theory-of-liability case, the combination of these errors would not automatically trigger a situation where the appellate court must presume the error was harmful. If presumed harm analysis were required, then our fundamental commitment to submitting broad-form questions, whenever feasible, would routinely be discarded for separate, granulated submissions to the jury. *See* TEX. R. CIV. P. 277; *Harris Cnty.*, 96 S.W.3d at 235–36. Moreover, even in multiple-theory-of-liability cases like *Casteel*, the presumed harm analysis is not automatic. *See Casteel*, 22 S.W.3d at 389–90; *Romero*, 166 S.W.3d at 227–28. As we stated in *Casteel*, "when questions are submitted in a manner that allows the appellate court to determine that the jury's verdict was actually based on a valid liability theory, the error may be harmless." 22 S.W.3d at 389 (citing *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995)). And regardless of whether "a granulated or broad-form charge is submitted, the trial court's duty is to submit only those questions, instructions, and definitions raised by the pleadings and the evidence." *Harris Cnty.*, 96 S.W.3d at 236; *see* TEX. R. CIV. P. 278; *Elbaor*, 845 S.W.2d at 243.

While *Casteel*'s presumed harm analysis is necessary in instances where the appellate court cannot determine "whether the improperly submitted theories formed the sole basis for the jury's finding" because the broad-form question mixed valid and invalid theories of liability, *Casteel*, 22 S.W.3d at 389, or when the broad-form question commingled damage elements that are unsupported by legally sufficient evidence, *Harris Cnty.*, 96 S.W.3d at 235, an improper inferential rebuttal instruction and improper defensive theory of contributory negligence presented in a broad-form question with separate answer blanks in a single-theory-of-liability case does not prevent the harmed

24

party from obtaining meaningful appellate review. When a trial court abuses its discretion by including erroneous charge questions or instructions in a single-theory-of-liability case, our traditional harmless error analysis applies and the appellate courts should review the entire record to determine whether the charge errors probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1, 61.1; *Urista*, 211 S.W.3d at 757.

Because we hold that *Casteel*'s presumed harm analysis does not apply, we next consider whether, applying traditional harmless error analysis, the alleged charge errors constitute reversible error. *See* TEX. R. APP. P. 61.1(a); *Urista*, 211 S.W.3d at 757. We address Young's objections to the inclusion of Ronnie's contributory negligence and the instruction of new and independent cause in turn.

### 1. Contributory Negligence

When charge questions are submitted in a manner that allows the appellate court to determine whether the verdict was actually based on a valid theory of liability, the error may be harmless. *Casteel*, 22 S.W.3d at 389; *see also Alvarado*, 897 S.W.2d at 752 ("Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial."); *Boatland of Hous., Inc. v. Bailey*, 609 S.W.2d 743, 750 (Tex. 1980) (holding that the potentially erroneous submission of defensive theories was harmless error because the jury found for the defendant on independent grounds and the complaining party failed to show how it probably resulted in an improper verdict). Young's argument that the inclusion of Ronnie's contributory negligence was harmful error fails for several reasons. First, Dr. Thota could only have been negligent in causing the tear in Ronnie's artery, and the jury failed to find that he was. The jury's

finding as to Dr. Thota's non-negligence is entirely separate from its finding as to Ronnie's negligence. Perhaps the jury was confused about whether to find Ronnie negligent and, despite the unavoidable accident instruction, believed that they had to find someone negligent. Either way, any error associated with the inclusion of a jury question regarding Ronnie's negligence was harmless.

Moreover, when determining whether harm occurred, we consider the entire charge. *See, e.g.*, *Tex. Emp'rs Ins. Assoc. v. McKay*, 210 S.W.2d 147, 149 (Tex. 1948). Here, the clarifying instructions at the end of Question 1 made it clear that the jury could answer in any of the following combinations: (1) "Yes" to both Dr. Thota and Ronnie; (2) "No" to both; or (3) "Yes" to one and "No" to the other—the choice the jury ultimately made. The charge's definition of proximate cause also clearly informed the jury that "[t]here may be more than one proximate cause of an event." In light of the entire charge and the separate answer blanks for Dr. Thota and Ronnie, it is evident that the jury was well aware that its findings as to Dr. Thota's and Ronnie's negligence were separate and that there could be more than one proximate cause of an event.

When the answer to a jury question cannot alter the effect of the verdict, the reviewing court considers that question immaterial. *See Alvarado*, 897 S.W.2d at 752. In *Alvarado*, we held that even if it were error for the trial court to submit a question as to the deceased plaintiff's negligence, that question was immaterial because of the jury's finding of "No" as to the defendant's liability for negligence. *Id.* Like *Alvarado*, any error in submitting the question of Ronnie's contributory negligence to the jury was harmless and rendered immaterial in light of the jury's finding of no negligence as to Dr. Thota. Once the jury answered "No" to whether any negligence of Dr. Thota

26

proximately caused Ronnie's injury, Dr. Thota was exonerated, and neither a "Yes" nor a "No" answer as to Ronnie's contributory negligence could alter the verdict.  *See id.*

### 2.  New and Independent Cause

Assuming without deciding that the new and independent cause instruction was improper, a review of the record does not indicate that it probably caused the rendition of an improper judgment.  *See* TEX. R. APP. P. 61.1(a); *Urista*, 211 S.W.3d at 757; *Reinhart*, 906 S.W.2d at 473. At trial, Dr. Thota testified on his own behalf, and Neill Doherty III, M.D. testified as Young's expert witness.  The evidence from the medical records and Dr. Thota's testimony indicated that good hemostasis was most likely obtained, which would mean that Ronnie was in a stable condition by the time he was released from the hospital.  Even Young's own medical expert, Dr. Doherty, admitted on cross-examination that there was a 99% chance that Ronnie was not bleeding when he was released after the catheterization procedure and that, based on the totality of the medical records, there was no objective evidence that Ronnie was bleeding or experiencing any complications at the time he was discharged from the hospital.  Both Dr. Thota and Dr. Doherty testified that if there had been an improper puncture in the iliac artery preventing hemostasis, Ronnie would likely have developed signs of bleeding before his discharge.  Dr. Doherty also testified that the cardiac catheterization was a reasonable procedure, given Ronnie's condition, and that the medical records did not indicate Dr. Thota had incorrectly performed the procedure.

Both parties' experts based their opinions, in part, on their interpretations of the doctors' reports from the emergency surgery the night of Ronnie's catheterization procedure.  The report by Dr. Thota's partner, Dr. Sudharshan, noted that Ronnie had a "puncture site just about the inguinal

27

ligament" and that a CT scan "apparently revealed bleeding from [the] external iliac artery puncture site." Based on Dr. Sudharshan's assessment, Dr. Walker performed the emergency surgery, and Dr. Walker's report noted that he repaired a "high tear" in Ronnie's right external iliac artery. Neither Dr. Sudharshan nor Dr. Walker testified at trial.

At trial, Dr. Thota's and Dr. Doherty's testimony about Ronnie's medical reports conflicted. Dr. Doherty testified that the standard of care for cardiac catheterization was to insert a needle and catheter into the right femoral artery below the inguinal ligament. In Dr. Doherty's opinion, Dr. Thota punctured Ronnie's artery at the wrong location, above the inguinal ligament and into the right external iliac artery. Dr. Doherty's opinion was based on Dr. Walker's report, the CT scan mentioned on Dr. Sudharshan's report, and the bleed in Ronnie's retroperitoneal cavity, which could occur when the puncture is too high, rather than the more visible femoral bleed that would occur if the puncture is in the femoral artery. In contrast, Dr. Thota claimed at trial that he did not breach the standard of care during Ronnie's catheterization procedure. He testified that he had no problems inserting the catheter and that he believed he entered the artery at the appropriate location. Dr. Thota stated that Dr. Sudharshan's finding that the puncture site was at "about the inguinal ligament," would indicate that the puncture site was correct. He further testified that Dr. Walker's report was ambiguous as to what he repaired and how far above or below the inguinal ligament the bleed originated. Also, Dr. Thota testified that a retroperitoneal bleed can occur with a femoral artery stick as well as an iliac artery stick and that, based on his review of the medical records and his own knowledge of the procedure, he met the standard of care.

Like many medical malpractice cases, this record contains conflicting expert opinions. The fact that Dr. Thota testified on his own behalf does not negate the weight that the jury could give to his testimony. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) (holding that the proper test for legal-sufficiency review must "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not"); *see also Wilson v. Scott*, 412 S.W.2d 299, 303 (Tex. 1967) (noting that the defendant physician's own testimony can establish the standard of care). "Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony." *City of Keller*, 168 S.W.3d at 819. Because of the conflicting testimony of Dr. Doherty and Dr. Thota, and because both testifying experts agreed that Ronnie was likely not bleeding upon his discharge from the hospital, the jury could have reasonably believed Dr. Thota's opinions and discounted Dr. Doherty's opinions. In circumstances where a reasonable jury could resolve conflicting evidence either way, we presume the jury did so in favor of the prevailing party. *See id.* at 821.

Based on the conflicting evidence, the jury could have reasonably concluded that Dr. Thota did not breach the standard of care without reaching the issue of proximate cause. In that case, the jury would not have relied on the new and independent cause instruction because it pertains only to the proximate cause element. *See Hawley*, 284 S.W.3d at 856 ("New and independent cause is a component of the proximate cause issue."). Thus, the record supports the jury's finding of no negligence as to Dr. Thota. Accordingly, our review of the entire record provides no clear indication that the new and independent cause instruction, if erroneous, probably caused the rendition of an

29

improper verdict. We therefore conclude that any error in the trial court's submission of the new and independent cause instruction was harmless. *See Urista*, 211 S.W.3d at 759.

### III. Conclusion

In sum, we hold that Young's timely and specific no-evidence objections were sufficient to preserve the disputed charge issues for appellate review. Because the trial court submitted a broad-form question on a single theory of liability that included separate answer blanks for Dr. Thota's and Ronnie's negligence, we hold that the court of appeals misapplied *Casteel* and its presumed harm analysis.[5] Even assuming the trial court abused its discretion by including a question as to Ronnie's contributory negligence and an instruction on new and independent cause, for the reasons explained above, we hold that these alleged charge errors were harmless and did not probably cause the rendition of an improper judgment. Because *Casteel*'s presumed harm analysis does not apply and any error in the disputed charge issues was harmless, we need not address Dr. Thota's remaining issues. Accordingly, we reverse the court of appeals' judgment and, without addressing whether the trial court erred by submitting the question as to Ronnie's contributory negligence or the instruction on new and independent cause, we remand the case to the court of appeals to consider Young's remaining issues.

_____
Paul W. Green
Justice

OPINION DELIVERED: May 11, 2012

---

[5] To the extent that it conflicts with this opinion, we expressly disapprove the appellate court's opinion in *Block v. Mora*, 314 S.W.3d 440 (Tex. App.—Amarillo 2009, pet. dism'd by agr.).

30