Opinion filed December 30, 2016



# In The

# Eleventh Court of Appeals

_____

## No. 11-15-00217-CV

_____

## CRYSTAL RIVER OIL & GAS, LLC, and RMS MONTE CHRISTO, LLC, Appellants

## V.

## ROBERT PATTON, Appellee

**On Appeal from the 39th District Court**

**Stonewall County, Texas**

**Trial Court Cause No. 4601**

## O P I N I O N

This appeal results from a jury trial in a suit to terminate an oil and gas lease. Robert Patton filed suit against Appellants, Crystal River Oil & Gas, LLC (Crystal River) and RMS Monte Christo, LLC, claiming that the lease held by Appellants terminated due to a cessation of production and was not extended by operation of a savings clause in the lease that continued the lease if "re-working operations" commenced within sixty days after production ceased. Based upon the jury's favorable answers to Patton's claims, the trial court entered judgment declaring that

Appellants' lease had terminated, and it awarded Patton title and possession of the leasehold estate.[1]  In four issues on appeal, Appellants argue that the trial court erred (1) by admitting testimony from an undisclosed expert, (2) by submitting an erroneous jury question regarding reworking activities on the lease, (3) by entering judgment that the lease terminated, and (4) by submitting jury questions regarding cessation of production without including dates.  Additionally, Patton has presented a cross-point in his brief that challenges the trial court's disposition of suspended funds.  We reverse and remand.

*Background Facts*

Appellants are the holders of an oil and gas lease dated March 27, 1948.  The lease, referred to as the Scoggins lease, covered property located in Stonewall County.  The lease contained the following provisions:

> 2. Subject to the other provisions herein contained, this lease shall be for a term of ten years from this date (called "primary term") and as long thereafter as oil, gas or other mineral is produced from said land hereunder.
>
> . . . .
>
> 5. If prior to discovery of oil or gas on said land Lessee should drill a dry hole or holes thereon, or if after discovery of oil, or gas the production thereof should cease from any cause, this lease shall not terminate if Lessee commences additional drilling or re-working operations within sixty (60) days thereafter . . . .

Appellants operated the lease for approximately twenty years.  The production of oil from the Scoggins lease resulted in a large amount of saltwater being produced as well.  Some of the wells produced almost 20 barrels of saltwater for each barrel of oil produced.  As a result, Appellants utilized a saltwater disposal well located on the leased premises.  The saltwater disposal well became inoperable around

---

[1]Patton subsequently leased the property for oil and gas development after the date that he alleged that Appellants' lease terminated.

September 2011, and Appellants made repairs on it in late October 2011. When the saltwater disposal well became inoperable, Appellants shut down the producing wells on the Scoggins lease.

Robert Patton testified that he became interested in the Scoggins lease in the fall of 2011. He stated that he investigated the production records for the Scoggins lease that had been filed with the Railroad Commission (RRC) and discovered that, according to the records, there had been no production for a period of several months. Patton began acquiring oil and gas leases on the property covered by the Scoggins lease. Subsequently, Patton sent Appellants a letter contending that the Scoggins lease had terminated and requesting that they release any interest they have in the property. Appellants refused and responded that the lease was still valid. Patton then filed suit seeking a determination that the Scoggins lease had terminated.

*Analysis*

In their second issue, Appellants assert that the trial court erred in overruling their objection to the wording of jury question no. 3. This question provided as follows:

> Did the Defendants fail to commence drilling or reworking activities *on the producing wells in question* within 60 days after the wells ceased to produce oil and gas?
>
> You are instructed that reworking operations means any and all actual acts, work, or operations in which an ordinarily competent operator under the same or similar circumstances would engage in a good faith effort to cause a well or wells to produce oil or gas in paying quantities.
>
> Answer "Yes" or "No"
> Answer:     Yes

3

(Emphasis added). Appellants contend that the inclusion of the phrase "on the producing wells in question" was erroneous and that it prohibited the jury from considering the work performed on the saltwater disposal well as constituting reworking operations.[2] We agree.

The standard of review for an allegation of jury charge error is "abuse of discretion." *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990). A trial court abuses its discretion by acting arbitrarily, unreasonably, or without consideration of guiding principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). An appellate court will not reverse a judgment for a charge error unless that error was harmful because it probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting the case to the court of appeals. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *see* Tex. R. App. P. 44.1(a). To determine whether an alleged error is harmful, we consider the pleadings, the evidence presented at trial, and the charge in its entirety. *Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n*, 710 S.W.2d 551, 555 (Tex. 1986).

We begin our analysis by noting that the *Texas Pattern Jury Charges* contains a pattern charge for the question at issue in this appeal. This pattern jury charge provides as follows:

QUESTION _____

Did *Larry Lessee* fail to commence additional drilling or reworking operations within [*indicate number of days specified in lease*] days after the well ceased to produce [*oil/gas*] [*in paying quantities*]?

"Drilling or reworking operations" means actual work or operations in which an ordinarily competent operator, under the same or similar circumstances, would engage in a good-faith effort with due

---

[2]Appellants objected to the inclusion of this phrase on this basis at the charge conference.

4

diligence to cause a well or wells to produce oil or gas in paying quantities.

Answer "Yes" or "No."

Answer: _____

Comm. on Pattern Jury Charges, State Bar of Tex., *Texas Pattern Jury Charges: Oil & Gas* PJC 303.16 (2016). The question and instruction submitted to the jury in this case was similar to the pattern jury charge. However, the pattern jury charge does not restrict reworking operations to only work performed on producing wells. The Comment to PJC 303.16 suggests that the question and its accompanying instructions "should conform to the language of the lease" with respect to "any specific definitions of the operations required." *Id.* cmt. The Comment also provides that "further instructions or additional questions may be needed to determine what actions constitute 'drilling operations' or 'reworking operations' *if such terms are defined in the lease*." *Id.* (emphasis added).

The key phrase in this lease is "re-working operations." The lease does not define this term. Appellants contend that restricting reworking operations to the producing wells conflicts with the terms of the lease since the lease does not contain this restriction. Conversely, Patton contends that limiting reworking operations under the cessation-of-production clause to the producing wells is required by the habendum clause of the lease.

In *Cox v. Stowers*, 786 S.W.2d 102, 105 (Tex. App.—Amarillo 1990, no writ), our sister court of appeals addressed a similarly worded savings clause that used the term "reworking operations." The court concluded that reworking operations "means any and all actual acts, work or operations in which an ordinarily competent operator, under the same or similar circumstances, would engage in a good faith effort to cause a well or wells to produce oil or gas in paying quantities." 786 S.W.2d at 105. *Cox* is one of the cases cited in the Comment to the pattern jury charge as

one of the sources of the suggested question and instruction.  PJC 303.16.  In fact, the instruction in the pattern jury charge is almost identical to the definition adopted in *Cox*.  *Id.*  Neither the pattern jury charge definition nor the *Cox* definition of reworking operations restrict the operations to work performed on the producing wells.  Instead, these definitions focus on what an ordinarily competent operator would do under the same or similar circumstances to restore production.

Appellants rely upon *Pro-Chem, Inc. v. Lassetter Petroleum, Inc.*, 837 P.2d 823 (Kan. Ct. App. 1990), for the proposition that work done to secure the use of a saltwater disposal well can constitute reworking operations under a cessation-of-production clause.  The operator in *Pro-Chem* became unable to use an off-lease saltwater disposal well that it had leased for disposal purposes.  837 P.2d at 824.  Production from the lease stopped until a new disposal site was found and the rerouting of the saltwater disposal pipeline to the new site was completed.  *Id.*  The work on rerouting the saltwater disposal pipeline began within the sixty-day time frame required under the lease.  *Id.*

The lessors in *Pro-Chem* asserted that rerouting the saltwater disposal pipeline to a new disposal well could not be considered reworking operations.  *Id.*  The Kansas Court of Appeals opined that "[r]eworking, when considered in the context of oil and gas leases, is a term of art, and whether any particular operation falls under the definition depends upon the facts peculiar to that operation."  *Id.* at 825.  The court noted that the lease was shut down because the disposal well initially being utilized by the operator was no longer available.  *Id.* at 826.  The court concluded that rerouting the saltwater disposal line to a new disposal well could constitute reworking operations under the cessation-of-production clause.  *Id.*  The court stated: "The construction was actual work done in a good faith attempt to restore oil production in paying quantities.  The saltwater disposal line connected with the well, and the well could not be operated without disposing of the saltwater."  *Id.*

6

The court's opinion in *Pro-Chem* has been cited with approval in *Williams &*
*Meyers Oil and Gas Law* where the commentators noted that it reflects "[t]he
difficulty of defining exactly what 'reworking operations' are in a particular context
given the many 'ancillary' activities that are required in order to operate an oil and
gas well." 3 Patrick H. Martin & Bruce M. Kramer, *Williams & Meyers Oil and Gas*
*Law* § 618.1 (2016). The court's reasoning in *Pro-Chem* is sound. We agree with
the court's observation that whether any particular operation falls under the
definition of reworking operations depends upon the facts peculiar to that operation.
As noted in the oil and gas treatise, there are ancillary activities that are sometimes
required in order to produce from a well.

In the absence of a restriction in the lease that only work performed on the
producing wells constitutes reworking operations, we conclude that the trial court
abused its discretion by limiting the jury question to only work performed on the
producing wells. This phrasing of the jury question provided an interpretation of the
lease that the parties did not provide for in their written agreement. *See Coker v.*
*Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("In construing a written contract, the
primary concern of the court is to ascertain the true intentions of the parties *as*
*expressed in the instrument*." (emphasis added)); *Providence Land Servs., LLC v.*
*Jones*, 353 S.W.3d 538, 543 (Tex. App.—Eastland 2011, no pet.) ("Courts are
without authority to supply the missing terms of a contract which the parties
themselves had either not seen fit to place in their agreement, or which they omitted
to agree upon." (quoting *Dempsey v. King*, 662 S.W.2d 725, 728 (Tex. App.—Austin
1983, writ dism'd))). Accordingly, the trial court erred in limiting the jury question
to only work performed on the producing wells.

We must next determine if the trial court's error caused harm. Appellants
contend that the phrasing of the jury question precluded the jury from considering
work done on the saltwater disposal well as reworking operations under the

cessation-of-production clause. We agree. As was the case in *Pro-Chem*, work on a saltwater disposal well may constitute reworking operations under the *Cox* definition, as contemplated by the pattern jury charge, if an ordinarily competent operator, under the same or similar circumstances, would engage in it in a good faith effort with due diligence to cause the producing wells to produce oil or gas in paying quantities. As worded, the jury question prohibited the jury from considering any work done on the saltwater disposal well as reworking operations. "Charge error is generally considered harmful if it relates to a contested, critical issue." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). The charge error in this case related to the critical contested issue of Appellants' contention that work on the saltwater disposal well constituted reworking operations versus Patton's contention that Appellants should have trucked the saltwater off the lease while the saltwater disposal well was inoperable. We sustain Appellants' second issue.

The appropriate remedy for a defective jury question is to remand for a new trial. *See Ford Motor Co. v. Ledesma*, 242 S.W.3d 32, 44 (Tex. 2007). We need not consider Appellants' first and fourth issues because they are also "remand" issues. In their third issue, Appellants seek the rendition of a judgment in their favor. The third issue is premised on the second issue that we have sustained pertaining to the defective jury question. Appellants ask us to "render judgment that the Scoggins Lease remains in force." They premise this request on the contention that the jury was not asked a proper question to support a judgment that the lease had terminated. We decline Appellants' request to render a judgment in their favor because the termination of the lease is a fact question that needs to be resolved at trial with a properly worded jury question. We overrule Appellants' third issue to the extent that it seeks the rendition of a judgment. Appellants also seek a remand in their third issue. We do not reach this remaining portion of the third issue in light of the

8

disposition of Appellants' second issue.  Finally, in light of the remand of this case for a new trial, we do not reach Patton's cross-point.

*This Court's Ruling*

We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.


JOHN M. BAILEY

JUSTICE


December 30, 2016

Panel consists of: Wright, C.J.,
Bailey, J., and Countiss.[3]

Willson, J., not participating.

---

[3]Richard N. Countiss, Retired Justice, Court of Appeals, 7th District of Texas at Amarillo, sitting by assignment.