

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-11-00879-CV

Maria Elena **MARTINEZ**,
Appellant

v.

**AA FOUNDRIES, INC.**,
Appellee

From the County Court at Law No. 3, Bexar County, Texas
Trial Court No. 352947
Honorable David J. Rodriguez, Judge Presiding

Opinion by:    Rebeca C. Martinez, Justice

Sitting:    Catherine Stone, Chief Justice
            Sandee Bryan Marion, Justice
            Rebeca C. Martinez, Justice

Delivered and Filed:  January 30, 2013

AFFIRMED

Maria Elena Martinez sued her employer, AA Foundries, Inc., under Chapter 21 of the Texas Labor Code, alleging claims for hostile work environment and retaliation. *See* TEX. LABOR CODE ANN. §§ 21.051, 21.055, 21.125 (West 2006).  The jury found against Martinez on her claims, and the trial court rendered a take-nothing judgment in favor of AA Foundries.  We affirm the judgment of the trial court.

## BACKGROUND

Martinez began working as a secretary at AA Foundries in 2000. In addition to her office duties, she was required to perform other duties such as cleaning the men's and women's restrooms during working hours. James Gregory Jones was also employed by AA Foundries and began working there in 2002. In 2005, Jones left AA Foundries after he was arrested for sexual assault; Jones returned to AA Foundries in November 2007 after being released from prison on parole. According to Martinez, Jones began propositioning her and making offensive remarks to her. Jones told Martinez he was going to kidnap her and take her to Las Vegas so they could get married. He also told Martinez not to gain too much weight so that he could carry her over the threshold. Knowing that Jones had twice been convicted of sexual assault and was a registered sex offender, Martinez began to fear for her life and safety.

In early 2008, Martinez took a three-month medical leave of absence. During this time, Jones continued to harass Martinez by stalking her at her residence, which is located across the street and down the block from AA Foundries. Martinez would see Jones lurking outside her house early in the morning after her husband left for work. Shortly after Martinez returned to work in May 2008, Jones approached Martinez in the building's narrow corridor while she was taking out the trash and stroked her hair. No one else was present, and Martinez stated that Jones looked at her eerily.

On Friday, May 16, 2008, Martinez complained to her supervisor, Ronnie Hunt, that she feared Jones. Martinez informed Hunt that Jones was "stalking her house," and that he told her he wanted to kidnap her and take her to Las Vegas. Hunt interrupted Martinez and said that he would take care of it. The following Monday, Hunt told Martinez he needed to talk to her and began yelling at her about her personal life. When Martinez asked him about Jones, Hunt replied that Jones was just trying to be a friend. Martinez became very upset and went home; she

returned during lunch, however, and asked Hunt for Jones' parole officer's name and number. Hunt told Martinez to look it up herself.

Martinez stated that after she complained to Hunt on May 16, "everything started to deteriorate," and the harassment and intimidation in the workplace worsened. Co-worker Leroy Beal urinated in front of Martinez while she was servicing the men's restroom. Martinez complained to Hunt, but he just laughed and turned away. Martinez was also offended by male co-workers grabbing their crotches in front of her, sexually explicit jokes and cartoons left on her desk, the sale of pornographic DVDs within the workplace, and co-workers giving her the "silent treatment" and dirty looks.

After complaining to Hunt, Martinez contacted Jones' parole officer; Martinez told her that Jones was stalking her and had threatened to kidnap her and take her to Las Vegas. A warrant was immediately issued for Jones' arrest, and he was held in jail pending a parole revocation hearing. Martinez was subsequently subpoenaed to testify at Jones' parole revocation hearing. When Martinez asked Hunt for time off to testify at the hearing, he told her that she needed to stay and answer the phones. On July 31, 2008, Martinez took a medical leave of absence and never returned to work. On August 5, 2008, she attended Jones' parole revocation hearing and was surprised to see Hunt and three other co-workers there. Although Jones' parole was revoked at the hearing, he was released from jail on the condition that he not have contact with Martinez. Martinez submitted her letter of resignation on August 7, 2008. Martinez subsequently filed a gender discrimination and retaliation complaint with the Equal Employment Opportunity Commission and the Texas Workforce Commission-Civil Rights Division, as well as a lawsuit against AA Foundries alleging claims for hostile work environment and retaliation.

At trial, Martinez's supervisor, Ronnie Hunt, testified that Martinez complained to him about workplace harassment only once, on May 16, 2008. According to Hunt, Martinez told him

Jones was stalking her and threatened to kidnap her and take her to Las Vegas. Hunt wrote a report documenting the complaint. Although Hunt did not take the kidnap threat seriously, he "checked it out" with Jones nonetheless. Hunt stated that on the following Monday, he "talked to all the guys that stood outside every morning with . . . Jones smoking cigarettes and bull crapping. None of them said he even left the place." Hunt asked the men if they had ever seen Jones leave AA Foundries and go to Martinez's house and they said "no." Hunt next confronted Jones. Jones denied stalking Martinez and told Hunt he had only been to her house one time, when he and his wife brought her food when she was out on medical leave. Hunt told Jones to stay away from Martinez. When Hunt talked to Martinez later that day, he told her to keep her love life out of his foundry, even though Hunt had no reason to believe that Martinez and Jones were involved in an affectionate relationship.

Hunt denied forbidding Martinez to attend the parole revocation hearing, stating that he merely denied her request to take time off to prepare for the hearing. Hunt stated that, in his opinion, "if you tell the truth, you don't need time to prepare." Regarding the pornographic DVDs in the office, Hunt stated that employee Juan Montoya, whom Martinez dated for several years while separated from her husband, had them mailed to work; Hunt found out and told Juan he did not want the DVDs sent to work.

According to Hunt, Martinez encouraged the male workers to talk with her. Hunt also presumed that Martinez was a prostitute because employee Bruno Montoya told Hunt that he gave Martinez $100 and "she just performed $50 of it." Hunt did not question Martinez about the $50, but noted in his report documenting the Jones complaint that Martinez owed $50 to Montoya.

Bruno Montoya, Martinez's co-worker, testified that he never saw Jones leave AA Foundries and go to Martinez's house and never witnessed Martinez being subject to harassment

or intimidation in the workplace. Montoya further stated he and Martinez had a sexual relationship and frequented motels while working at AA Foundries. He stated their arrangement continued until right before Martinez stopped working at AA Foundries. Montoya also testified he paid Martinez money in exchange for sex.

At the close of trial, the following liability questions were submitted to the jury:

(1) Was sex a motivating factor in AA FOUNDRIES, INC.'S decision to discharge MARIA ELENA MARTINEZ?

(2) Was MARIA ELENA MARTINEZ subjected to a "hostile work environment"?

(3) Did AA FOUNDRIES, INC. discharge MARIA ELENA MARTINEZ because of MARIA ELENA MARTINEZ'S opposition to a discriminatory practice, making or filing a charge of discrimination, or filing a complaint?

The jury answered "no" to each question. In accordance with the jury's verdict, the trial court rendered a take-nothing judgment in favor of AA Foundries. Martinez filed a motion for judgment notwithstanding the verdict and/or new trial, which was denied by the trial court after a hearing. Martinez now appeals.

### DISCUSSION

Martinez raises three issues on appeal, arguing that the trial court erred in instructing the jury and in excluding evidence, and that the evidence is insufficient to support the jury's finding that she was not subjected to a hostile work environment.

### *Charge Error*

In her first issue, Martinez argues the trial court erred by impermissibly restricting the time period within which the jury could consider events as having created a hostile work environment for Martinez. We review a trial court's decision to submit or refuse a particular jury instruction for an abuse of discretion. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). "An instruction is proper if it (1) assists the jury, (2) accurately states the law, and (3) finds support in the pleadings and evidence." *Id.* (quoting *Columbia Rio Grande Healthcare, L.P. v.*

*Hawley*, 284 S.W.3d 851, 855–56 (Tex. 2009)).  Charge error is harmful if it probably caused an improper judgment or probably prevented the appellant from properly presenting her case to the appellate court.  *Thota*, 366 S.W.3d at 687.  "Charge error is generally considered harmful if it relates to a contested, critical issue."  *Id.* (quoting *Hawley*, 284 S.W.3d at 856).

Here, the trial court instructed the jury that "[t]he only relevant time period to be considered by the jury is from May 16, 2008, the day that MARIA ELENA MARTINEZ first gave notice to AA FOUNDRIES, INC. that she had any complaints or concerns about sexual harassment until July 31, 2008, her last day working for AA FOUNDRIES, INC."  On appeal, Martinez contends that there is some evidence that events after July 31, 2008 contributed to the hostile work environment at AA Foundries, and thus the jury should have been permitted to consider those events.  Specifically, she asserts that the evidence shows that she was "deeply, negatively affected by the appearance of Ronnie Hunt and several of her co[-]workers at the parole revocation hearing testifying for . . . Jones, which occurred two days before her constructive termination" on August 7, 2008.  She further argues that "[i]t can reasonably be inferred from [her] coworkers' adverse testimony at trial that their testimony at the parole hearing was favorable to . . . Jones . . . ." and that this "last straw" forced her to resign.

At trial, Martinez's only objection to the charge was that the jury was not permitted to consider events occurring prior to May 16, 2008.  The trial court overruled that objection and no further charge objections or requests were made by Martinez.  Because Martinez did not object on the basis on which she now appeals—that the jury should have been allowed to consider events occurring after July 31, 2008 in determining whether Martinez was subjected to a hostile work environment and retaliation—we conclude Martinez has waived this issue on appeal.  *See* TEX. R. CIV. P. 274 ("A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection.  Any complaint as to a[n] . . . instruction, on account of

any defect, omission, or fault in pleading, is waived unless specifically included in the objections. . . . No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only."); *see also Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 831 (Tex. 2012) (aggrieved party "can complain on appeal only if it made the trial court aware, timely and plainly, of the purported problem and obtained a ruling"); *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 241(Tex. 1992) (same).

Even if we were to assume that error was properly preserved, we nonetheless conclude that the trial court did not err in instructing the jury that it could not consider events occurring after July 31, 2008. We acknowledge that there may be instances in which harassment occurring outside the physical workplace can form the basis of a hostile work environment claim. *See, e.g.*, *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1102 (8th Cir. 2001) ("[t]he offensive conduct does not necessarily have to transpire at the workplace in order for a juror reasonably to conclude that it created a hostile working environment"); *see also Nardini v. Continental Airlines, Inc*., 60 S.W.3d 197, 201 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (noting that, in summary judgment proceedings, court may not exclude from consideration allegations of sexual conduct occurring after work hours, but instead must ask whether sufficient facts exist from which to infer nexus between sexual conduct and work environment). Here, however, Martinez has not alleged that any offensive conduct was directed toward her between her last working day at AA Foundries on July 31 and the day she resigned on August 7. She merely complains that the jury was prohibited from considering that Hunt and other co-workers presumably testified in favor of Jones at the parole revocation hearing. Because her co-workers' attendance at the parole revocation hearing does not constitute harassment or offensive conduct directed toward Martinez, we cannot conclude the trial court abused its discretion in instructing the jury to only consider the time period from May 16, 2008

to July 31, 2008 in assessing whether Martinez was subjected to a hostile work environment. Accordingly, we overrule Martinez's first issue on appeal.

### *Exclusion of Evidence*

Next, Martinez contends the trial court erred in excluding certain exhibits. At trial, Martinez attempted to introduce several off-color cartoons and printouts of email jokes she claims were put on her office desk to show the existence of a hostile work environment. Counsel for AA Foundries objected, arguing that Martinez could not establish who left the papers on her desk. During an offer of proof, Martinez was asked whether she knew where the cartoons and emails came from; she answered that the only other person who had access to her office was Ronnie Hunt. The trial court sustained the objection by AA Foundries and denied admission of the exhibits.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 754 (Tex. 1995). An abuse of discretion occurs when the trial court acts without regard for any guiding rules or principles. *Id.* at 754.

Whether or not to admit evidence at trial is a preliminary question to be decided by the court. TEX. R. EVID. 104(a). A condition of admissibility is the relevance of the offered evidence. TEX. R. EVID. 401 & 402. "Evidence has no relevance if it is not authentically what its proponent claims it to be." *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). Rule 901(a) of the Rules of Evidence defines authentication as a "condition precedent" to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a). The trial court must decide whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic. *Tienda*, 358 S.W.3d at 638; *Miles v. Ford Motor Co*., 922 S.W.2d 572,

597 (Tex. App.—Texarkana 1996), *aff'd in part and rev'd in part on other grounds*, 967 S.W.2d 377 (Tex. 1998). Evidence may be authenticated in various ways, including by direct testimony from a witness with personal knowledge, by comparison with other authenticated evidence, or by circumstantial evidence. *See* TEX. R. EVID. 901(b)(1), (3), (4).

In this case, Martinez failed to authenticate the proffered exhibits. She did not identify whom the cartoons and emails were from, but merely stated that Ronnie Hunt was the only other person at AA Foundries who had access to her office. Simply put, Martinez failed to sufficiently link the exhibits to their purported author. *See Tienda*, 358 S.W.3d at 641–42 & n.36 (fact that an email on its face purports to come from a certain person's email address, without more, is typically insufficient to support a finding of authenticity). Given the lack of authentication, we cannot say the trial court abused its discretion in excluding the exhibits in question. We thus overrule Martinez's second issue.

### *Hostile Work Environment*

Finally, Martinez asserts that the jury's finding that Martinez was not subjected to a hostile work environment is against the great weight and preponderance of the evidence because the evidence proves the contrary proposition as a matter of law.

When a party attacks the legal sufficiency of an adverse finding on an issue on which she had the burden of proof, she must demonstrate that the evidence established, as a matter of law, all vital facts in support of the issue. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). In conducting a legal sufficiency review, we view the evidence presented at trial in the light most favorable to the jury's verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 770 (Tex. 2010); *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex.

2005). We must determine "whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller*, 168 S.W.3d at 827.

A party challenging the factual sufficiency of a jury finding upon which that party had the burden of proof must demonstrate that "the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem.*, 46 S.W.3d at 242. We must first examine the record to determine if there is some evidence to support the finding. *Id.* at 241-42. If there is, we must then determine whether "the finding is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and manifestly unjust, or if the great preponderance of the evidence clearly supports its non-existence." W. Wendell Hall, *Hall's Standards of Review in Texas*, 42 ST. MARY'S L.J. 1, 42 (2010) (quoting *Castillo v. U.S. Fire Ins. Co.*, 953 S.W.2d 470, 473 (Tex. App.—El Paso 1997, no writ)). Regardless of whether the "great weight" challenge is to a finding or a non-finding, "[a] court of appeals may reverse and remand a case for new trial [only] if it concludes that the jury's 'failure to find' is against the great weight and preponderance of the evidence." *Ames v. Ames*, 776 S.W.2d 154, 158 (Tex. 1989).

In applying these standards, we must be mindful that the jury is the sole judge of the witnesses' credibility and the weight given to their testimony. *City of Keller*, 168 S.W.3d at 819. Jurors may choose to believe one witness and disbelieve another. *Id.* at 819–20. Most credibility questions are implicit rather than explicit in a jury's verdict. *Id.* at 819. Thus, reviewing courts must assume jurors decided all credibility questions in favor of the verdict if reasonable human beings could do so. *Id.*

The elements of a prima facie case of hostile work environment are: (1) the employee belongs to a protected group; (2) the employee was subjected to unwelcome harassment; (3) the harassment complained of was based on the protected characteristic, e.g., race or gender; (4) the

harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 325 n.14 (Tex. App.—Texarkana 2008, pet. denied); *see also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 806 (Tex. 2010). "To affect a term, condition, or privilege of employment, the harassment 'must be sufficiently severe or pervasive to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Aryain v. Wal-Mart Stores of Tex., LP*, 534 F.3d 473, 479 (5th Cir. 2008) (quoting *Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)). The work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id.* (quoting *Faragher v.City of Boca Raton*, 524 U.S. 775, 786 (1998)). When determining whether a hostile work environment exists, we review all the circumstances, which may include: the frequency of the discriminatory conduct; the severity of the conduct; whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and whether the conduct unreasonably interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Twigland Fashions, Ltd. v. Miller*, 335 S.W.3d 206, 220 (Tex. App.—Austin 2010, no pet.); *see also City of Laredo v. Negrete*, No. 04-08-00737-CV, 2010 WL 454921, at *5 (Tex. App.—San Antonio Feb. 10, 2010, pet. denied) (mem. op.).

Addressing Martinez's legal sufficiency complaint first, we note that although Martinez testified that AA Foundries did nothing to stop Jones' harassment of her, there was also some evidence presented to the contrary. Hunt testified that even though he was skeptical of Martinez's claims due to her history of amorous relationships in the workplace, he interviewed Jones and other employees about the allegations. All of the men stated that they never saw Jones leave the work site and go to Martinez's home. Hunt authored a report documenting Martinez's

complaint and further directed Jones to stay away from Martinez. Given this evidence, the jury could have concluded that Martinez failed to establish the fifth element of a hostile work environment claim: that AA Foundries failed to take prompt remedial action after learning of Jones' harassing behavior. Accordingly, on this record, we conclude that the jury's adverse finding on the existence of a hostile work environment is within the zone of reasonable disagreement and is supported by legally sufficient evidence. *See City of Keller*, 168 S.W.3d at 822.

As to Martinez's factual sufficiency complaint, we are likewise unable to conclude that the jury's finding is against the great weight and preponderance of the evidence. The jury was the sole judge of the witnesses' credibility and the weight to be given to their testimony. In addition to Hunt's testimony, the jury also heard from Martinez's co-worker, Bruno Montoya, who testified that he never saw Jones leave AA Foundries and go to Martinez's house. Montoya also stated he and Martinez had a sexual relationship and frequented motels while working at AA Foundries. He stated their arrangement continued until right before Martinez stopped working at AA Foundries. Montoya also stated he paid Martinez for sex. We defer to the jury's assessment as to the credibility of each witness and the weight given to their respective testimony. Accordingly, we conclude the evidence is factually sufficient to support the jury's finding. We overrule Martinez's third issue.

## CONCLUSION

Based on the foregoing reasons, we overrule Martinez's issues on appeal, and affirm the judgment of the trial court.


Rebeca C. Martinez, Justice