**Affirmed and Memorandum Opinion filed December 28, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-23-00044-CV

---

## IN RE COMMITMENT OF DERIN KEITH MUELLER

---

### On Appeal from the 149th District Court
### Brazoria County, Texas
### Trial Court Cause No. 114969-CV

---

## M E M O R A N D U M   O P I N I O N

This appeal involves a civil commitment pursuant to the Sexually Violent Predators Act (the "SVP Act"). *See* Tex. Health & Safety Code Ann. §§ 841.001-841.209. A jury found Derin Keith Mueller is a sexually violent predator as defined in section 841.003 of the Texas Health and Safety Code and the trial court ordered Mueller committed until his behavioral abnormality changes to the extent he no longer is likely to engage in a predatory act of sexual violence. *See id*. §§ 841.003, 841.081.

Mueller raises three issues challenging the trial court's order of commitment and asserts (1) the evidence is legally insufficient to support the jury's finding that

he is a sexually violent predator, (2) the evidence supporting this finding is factually insufficient, and (3) the trial court abused its discretion by refusing Mueller's requested jury instruction. For the reasons below, we overrule Mueller's issues and affirm the trial court's order of commitment.

## BACKGROUND

In October 2021, the State filed a petition asserting that Mueller is a sexually violent predator and asking that he be committed for treatment and supervision. The State alleged that Mueller previously had been convicted of two sexually violent offenses in Brazoria County. *See id.* § 841.001(a)(1). The State also asserted that an expert had performed a clinical assessment of Mueller and found that he suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See id.* § 841.001(a)(2). When the petition was filed, Mueller was incarcerated but was scheduled to be released in July 2023.

The parties proceeded to a jury trial in November 2022. The jury heard testimony from two witnesses: (1) Dr. Christine Reed, a forensic and clinical psychologist, and (2) Mueller. We summarize relevant portions of their testimonies below.

### Dr. Reed

Dr. Reed began her testimony by discussing her educational background and professional experience. Dr. Reed said she received her undergraduate degree in psychology from Southern Methodist University and her doctoral degree in clinical psychology from the University of Texas Southwestern Medical Center at Dallas. Dr. Reed said she has been a licensed psychologist since 2008.

According to Dr. Reed, her practice is comprised mostly of criminal evaluations; she does not provide any psychological treatment to patients. Dr.

Reed testified that she has conducted hundreds of sex offender risk assessments and approximately 80-90 evaluations for behavioral abnormalities. For the behavioral-abnormality evaluations, Dr. Reed said she follows the same general process: she reviews records pertaining to the person that is the subject of her evaluation, including medical, mental health, criminal, and educational records; performs a clinical interview; scores several medical instruments that "help [her] get an idea of risk factors or of their risk for reoffending"; and "come[s] up with an opinion" regarding whether the person has a behavioral abnormality.

Here, Dr. Reed said she was retained to opine whether Mueller has a "behavioral abnormality" as that term is used in the SVP Act. According to Dr. Reed, this requires determining whether Mueller is "likely to commit a future act of sexual violence." Dr. Reed said the term "likely" means "[i]t's probable, something that's beyond a mere possibility."

For this determination, Dr. Reed said she reviewed Mueller's records, including his military, criminal, probation, and medical records. Dr. Reed interviewed Mueller on December 3, 2021; the two met via a video conference that lasted approximately 3.5 hours.

Dr. Reed then testified regarding the sexual allegations and offenses in Mueller's background. According to Dr. Reed, Mueller said that, when he was 14 years old, "he was arrested for engaging in sexual activity — I think he said fondling — with a 12- or 13-year-old girl." Mueller told Dr. Reed the charges were dropped and did not result in a conviction. Dr. Reed opined that it was significant this offense was brought to the attention of law enforcement because "that means that the person has, you would hope, registered that what they did was not appropriate, was wrong, it was illegal and that they would then correct themselves."

3

Dr. Reed said Mueller later was convicted for "carnal knowledge in the military system" in 2005. According to Dr. Reed, Mueller was in the Navy at this time and was convicted in a general court-martial. Dr. Reed testified that the offense occurred in December 2002, when Mueller, who was then 19 years old, had sex with a 15-year-old girl.

Mueller told Dr. Reed that he met the girl at a party but, according to Dr. Reed's review of the records, the girl said she and Mueller had been talking prior to the party. Mueller also told Dr. Reed he thought the girl was 18 years old; however, the records related to the offense showed that Mueller initially admitted that he was aware at the time of the offense that the girl was 15 years old. Dr. Reed said she considered this offense to be "sexually deviant" because Mueller "was an adult at the time and knew that [the girl] was under age."

During the course of the military's investigation into this offense, Dr. Reed said there were other allegations regarding Mueller's sexual contact with underage females. Specifically, there was an allegation that Mueller had a sexual relationship in 2001 with a 14-year-old girl when he was 18 years old. The girl's parents agreed to not report the offense to police if Mueller "stayed away from the girl, and so no charges were made for that offense." During her interview with Mueller, Mueller admitted to engaging in sexual intercourse with the girl and said he knew her age at the time.

Dr. Reed said Mueller was charged with other crimes as part of the court-martial, one of which was "wrongfully using a government computer to receive and store sexually explicit images of [Mueller's] genitalia." The investigation into this offense showed Mueller was sending the images "[t]o underage females" who were 12 to 16 years old. According to Dr. Reed, at the time of the investigation Mueller "admitted to being in communication with about 20 underage females."

4

Mueller also "admitted that he did try to get them to send pictures, nude pictures of themselves." Mueller stated in a stipulation completed at the time of the military investigation that he knew the girls' ages. According to Dr. Reed, Mueller met these girls in "chat rooms specifically for [] 12- to 14-year-old girls."

For these charges, Mueller was sentenced to 18 months confinement in military jail. Based on her review of the records, Dr. Reed testified that Mueller did not have any disciplinary problems while he was confined. Dr. Reed said Mueller also participated in sex offender treatment. However, Dr. Reed said Mueller was unable "to tell [her] anything that he learned from that sex offender treatment."

Dr. Reed said Mueller committed additional sexual offenses in 2011 that involved two children: Betty, who was 5 years old, and Charlie, who was 6 years old. Mueller was in a relationship with the children's mother at the time the offenses were committed. With respect to Betty, Dr. Reed recounted that the records showed that Betty:

> complained of pain in her vaginal area and then told a family member that her dad, Mr. Mueller, had rubbed her down there. She also said that he touched her vagina inside and out. Later the allegations were also that with [Charlie], that [Mueller] had had [Betty] touch her brother's penis, masturbate her brother's penis, that [Mueller] had had [Charlie] touch his sister's vagina, that he wanted [Charlie] to stick his finger in [Betty's] vagina but he didn't — [Charlie] didn't want to do that but he did touch her.

Mueller was arrested for the offenses against Betty; he pled guilty and was placed on deferred adjudication.

Approximately three years later, Dr. Reed said Charlie made an outcry regarding sexual abuse that occurred between him and Mueller. Dr. Reed said these were not new offenses but were related to those that occurred at the same

time as the offenses involving Betty. Dr. Reed said Mueller also pled guilty to these offenses and was placed on deferred adjudication probation.

In her interview with Mueller, Dr. Reed said he admitted to touching Betty "down there" but said "it's because he gives her baths" and "wasn't sexual in nature." With regard to the offenses against Charlie, Dr. Reed recounted that Mueller "said nothing ever happened with [Charlie] and that [Charlie] and his mother made up the allegations." Dr. Reed opined that it is significant that Mueller now "minimize[s] his behavior or just denie[s] his behavior." According to Dr. Reed, it is difficult to prevent these types of occurrences from happening again if "you're not admitting to it and have no insight into your behavior." Dr. Reed also stated that it was significant that Betty and Charlie were much younger than the victims of Mueller's previous offenses.

Dr. Reed said Mueller again participated in sex offender treatment. However, Mueller had some problems in the program involving "issues with anger." In her interview with Mueller, Mueller was not able to describe anything he learned from the treatment program.

Dr. Reed said Mueller did not comply with all conditions of his probation stemming from these offenses. Mueller was prohibited from accessing the internet "but [it] turns out he had a second phone that he wasn't turning over" to his probation officer. Mueller also had unsupervised contact with minors when he attended a funeral. Mueller's probation was revoked and he was sentenced to eight years imprisonment.

Dr. Reed then discussed the psychological testing instruments she used to evaluate Mueller, one of which was the Hare Psychopathy Checklist. For this test, "the score of about 30 or above is considered to be a psychopath"; Mueller scored a 21. According to Dr. Reed, this means Mueller "had some traits of psychopathy"

6

but not "enough to give him a diagnosis of psychopathy."

Dr. Reed also employed the Static-99R, which is comprised of a list of risk factors. Dr. Reed said Mueller received a score of 5, which "would put him in the category of above average risk for reoffending" as compared to other sex offenders.

Finally, Dr. Reed used the Risk for Sexual Violence Protocol ("RSVP") during her evaluation of Mueller. Dr. Reed said several factors in particular were applicable to Mueller's background:

- Chronicity of sexual violence: Mueller's sexual violence has continued over time, beginning when he was a juvenile.

- Escalation of sexual violence: Mueller began by having sexual relationships with underage girls but then progressed to five- and six-year-old children.

- Problems with self-awareness: Mueller "had little awareness or acknowledgement of the nature, the motivations, the consequences of his sexual behaviors."

Dr. Reed said the RSVP also identified several protective factors, including Mueller's age, his relatively stable employment, his lack of institutional difficulties, and his community support, "mostly being his mother." But even taking these positive factors into account, Dr. Reed opined that "Mueller is at an above-average risk to reoffend."

In conclusion, Dr. Reed said she diagnosed Mueller with "rule-out pedophilic disorder." According to Dr. Reed, "'rule-out' just means that [she] had enough information to suggest that pedophilic disorder was a problem but not enough information to specifically make the diagnosis." Specifically, Dr. Reed said she lacked information showing specific pedophilic occurrences took place for longer than a six-month period.

Dr. Reed also diagnosed Mueller with "[u]nspecified personality disorder with antisocial features." Explaining this diagnosis, Dr. Reed testified that "personality disorder is a longstanding pattern of behaviors of interacting with others, interacting with the world, that usually causes impairment, causes problems in your relationships, things like that." Dr. Reed said "antisocial" refers to engaging in criminal acts.

In sum, Dr. Reed opined that Mueller has a "behavioral abnormality" as necessary to warrant commitment under the SVP Act.

*Mueller*

Testifying at trial, Mueller said he currently is incarcerated for indecency with a child by sexual contact. Mueller said he previously was incarcerated for carnal knowledge involving a person over the age of 12 but under the age of 16.

Mueller acknowledged that he was arrested for "fondling a 12-year-old when [he] was 13, 14 years old." According to Mueller, at this time he was on probation for breaking and entering of a habitat. Mueller said the girl involved in the incident was his friend's younger sister. Mueller agreed that he "fondle[d] [the girl] in a sexual manner." Mueller testified that he "didn't see anything wrong with what [he] did."

Mueller testified regarding the 2001 allegation, which occurred when he was 18 years old and involved a girl that was 14. When asked if he saw whether there was anything wrong with having a sexual relationship with a 14-year-old girl, Mueller responded: "I was in high school, so, no."

Mueller also discussed the carnal knowledge offense that occurred while he was in the Navy. Mueller said the offense took place the day before his wedding day and involved a girl he met that night. Mueller said he did not know how old

the girl was at the time the offense occurred. Mueller acknowledged stipulating at the time of the conviction that he knew the girl was 15 years old; in his trial testimony, Mueller said he did not recall making that stipulation. Mueller said he would not have had sex with the girl if he had known she was 15 years old.

Mueller agreed that he previously had "specifically go[ne] into chat rooms that were targeted for 12- to 14- year-old girls." Mueller also agreed that he was "sending pictures of [his] genitals to girls or who [he] believed to be underaged girls" and was "also trying to get them to send [him] nude photographs of them." Mueller agreed that he was using Navy computers to facilitate these online interactions.

Mueller said he completed his sentence and sex offender treatment. Mueller said he did not think he "had a sexual attraction to children" and did not think "that there was any need for [him] to stay away from children."

With respect to the 2011 offenses involving Betty and Charlie, Mueller denied touching Betty "for sexual purposes." Mueller denied forcing Betty and Charlie to have sexual contact with him or with each other. Mueller said he was not sexually attracted to Betty or Charlie. Mueller said he entered into a plea bargain because he "felt it was in [his] best interest." Mueller testified that he tried to "file an appeal in an attempt to take back [his] plea."

Finally, Mueller testified that he does not have a "problem with a deviant sexual attraction to children." Mueller also denied having "any type of sexual problem" that he needs help with. According to Mueller, he currently is involved in a relationship with a woman with two children, one aged 5-6 and the other 12-13. Mueller said he does not see any problem with his relationship with this woman. Mueller said he does not need any sex offender treatment to avoid reoffending in the future.

*Conclusion of Trial*

After the parties rested, the jury returned a verdict finding beyond a reasonable doubt that Mueller "is a sexually violent predator." The trial court signed an Order of Commitment on November 8, 2022. Mueller timely filed this appeal.

ANALYSIS

Mueller raises three issues on appeal:

1. the evidence is legally insufficient to support the jury's finding that Mueller is a sexually violent predator;

2. the evidence is factually sufficient to support the jury's finding that Mueller is a sexually violent predator; and

3. the trial court abused its discretion by refusing Mueller's requested jury instruction.

We begin with an overview of the applicable law before addressing Mueller's issues in turn.

## I. The SVP Act

The legislature provided for the civil commitment of sexually violent predators under the SVP Act on a finding that "a small but extremely dangerous group of sexually violent predators exists and that those predators have a behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the predators likely to engage in repeated predatory actions of sexual violence." *See* Tex. Health & Safety Code Ann. § 841.001. The legislature expressly found that "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators is necessary and in the interest of the state." *Id*.

Under the SVP Act, a person is a sexually violent predator if he (1) is a

repeat sexually violent offender, and (2) suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *Id*. § 841.003(a). With respect to the first element, a person is a repeat sexually violent predator if (as relevant here) the person is convicted of more than one sexually violent offense and a sentence is imposed for at least one of the offenses. *Id*. § 841.003(b).[1] As to the second element, a behavioral abnormality is defined as "a congenital or acquired condition that, by affecting a person's emotional or volitional capacity, predisposes the person to commit a sexually violent offense, to the extent that the person becomes a menace to the health and safety of another person." *Id*. § 841.002(2). A predatory act is defined as "an act directed towards individuals, including family members, for the primary purpose of victimization." *Id*. § 841.002(5).

If a judge or jury determines that a person is a sexually violent predator, the trial court must commit the person for treatment and supervision to begin on the date of release from prison and to continue "until the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." *Id*. § 841.081(a).

## II. Legal Sufficiency

In his first issue, Mueller challenges the legal sufficiency of the evidence supporting the jury's finding that he suffers from a behavioral abnormality as defined by chapter 841. *See id*. §§ 841.002(2), 841.003(a)(2). Mueller bases this challenge on his contention that Dr. Reed's expert opinion was "misleading, conclusory, and speculative," and therefore unreliable. Without Dr. Reed's

---

[1] The statute includes other criteria that qualify a person as a repeat sexually violent offender, but they are not at issue here. *See* Tex. Health & Safety Code Ann. § 841.003(b)(1)-(2).

11

testimony, Mueller asserts, the evidence is insufficient to support commitment.

For legal sufficiency challenges under chapter 841, we employ the standard of review applicable in criminal cases. *See In re Commitment of Stoddard*, 619 S.W.3d 665, 675 (Tex. 2020). We view the evidence in the light most favorable to the prosecution and determine whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

For both a legal and factual sufficiency review, we presume the factfinder resolved disputed evidence in favor of the finding if a reasonable factfinder could do so, but we may not ignore undisputed facts contrary to a finding. *Id.* at 676; *In re Commitment of Baiza*, 633 S.W.3d 743, 749 (Tex. App.—Houston [14th Dist.] 2021, no pet.). A distinction arises in treatment of disputed evidence that a reasonable factfinder could not have credited in favor of a finding — we disregard such disputed evidence in a legal sufficiency review, but we consider this disputed evidence in a factual sufficiency review. *See Stoddard*, 619 S.W.3d at 675; *Baiza*, 633 S.W.3d at 749.

Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence establishes conclusively the opposite of a vital fact. *Gunn v. McCoy*, 554 S.W.3d 645, 658 (Tex. 2018); *Baiza*, 633 S.W.3d at 749.

An expert witness may testify regarding scientific, technical, or other specialized matters if the expert is qualified, her opinions are relevant, the opinion is reliable, and the opinion is based on a reliable foundation. *Whirlpool Corp. v.*

12

*Camacho*, 298 S.W.3d 631, 637 (Tex. 2009). No objection to the admission of an expert's opinion is required when the expert's testimony is conclusory and lacks probative value as a result. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 232 (Tex. 2004); *see, e.g.*, *In re Commitment of Throm*, No. 14-19-00575-CV, 2021 WL 1185100, at *5 (Tex. App.—Houston [14th Dist.] Mar. 30, 2021, no pet.) (mem. op.).

A conclusory statement is one that expresses a factual inference without providing underlying facts to support that conclusion. *Padilla v. Metro. Transit Auth. of Harris Cnty.*, 497 S.W.3d 78, 85 (Tex. App.—Houston [14th Dist.] 2016, no pet.). Conclusory testimony cannot support a judgment because it is considered no evidence. *Bombardier Aerospace Corp. v. SPEP Aircraft Holdings, LLC*, 572 S.W.3d 213, 222 (Tex. 2019). An expert's testimony is conclusory when the expert asserts a conclusion with no basis. *Id*. at 223. Accordingly, to support a judgment, the expert must link her conclusions to the facts and explain the basis of her assertions. *Id*. An expert's experience alone may be a sufficient basis for expert testimony. *Id*. at 227.

Here, Mueller did not object at trial that Dr. Reed's opinions were unreliable. Thus, to prevail on his legal sufficiency claim, he must show that the evidence offers no basis to support her opinions. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 222; *Coastal Transp. Co.*, 136 S.W.3d at 232. We conclude that this showing was not made.

Dr. Reed testified that she has an undergraduate and doctoral degree in psychology and has been a licensed psychologist since 2008. Dr. Reed said she has conducted hundreds of sex offender risk assessments and approximately 80-90 evaluations for behavioral abnormalities. According to Dr. Reed, she follows the same general framework for behavioral-abnormality evaluations, which includes

reviewing records, performing a clinical interview, and scoring certain psychological assessments. Dr. Reed applied this framework for her evaluation of Mueller, beginning with a review of his military, criminal, probation, and medical records. Dr. Reed then interviewed Mueller for approximately 3.5 hours and discussed with him the sexual offenses and allegations noted in his records. Dr. Reed also employed three psychological tests to evaluate Mueller, including the Hare Psychopathy Checklist, the Static-99R, and the RSVP. Based on this body of evidence, Dr. Reed diagnosed Mueller with "rule-out pedophilic disorder" and "unspecified personality disorder with antisocial features." In sum, Dr. Reed opined that Mueller has a "behavioral abnormality" as that term is used in the SVP Act.

Having reviewed the record, we conclude it demonstrates an adequate basis for Dr. Reed's opinions and her opinions cannot be characterized as wholly conclusory or without any foundation. *See Bombardier Aerospace Corp.*, 572 S.W.3d at 222; *see also, e.g.*, *Barrientes v. State*, No. 14-22-00023-CV, 2023 WL 1169022, at *3-4 (Tex. App.—Houston [14th Dist.] Jan. 31, 2023, no pet.) (mem. op.) (in a similar SVP Act case, the court concluded that Dr. Reed's testimony was not conclusory because she provided a similar basis for her opinions); *In re Commitment of Gonsalez*, No. 07-23-00065-CV, 2023 WL 4346714, at *2 (Tex. App.—Amarillo June 29, 2023, no pet. h.) (mem. op.) (same); *In re Commitment of Sawyer*, No. 05-17-00516-CV, 2018 WL 3372924, at *7 (Tex. App.—Dallas July 11, 2018, pet. denied) (mem. op.) (same).

Mueller raises several individual arguments challenging the reliability of Dr. Reed's testimony, which we address in turn.

First, Mueller asserts that Dr. Reed "relied on an incorrect legal interpretation" with respect to the term "likely." Mueller points to the following

exchange between the State's attorney and Dr. Reed:

Q. And so looking at that question that you're offering an opinion on, that he suffers from a behavioral abnormality that makes a person likely to engage in a predatory act of sexual violence, is the term "likely" defined anywhere in Chapter 841 of Texas Health and Safety Code?

A. It's been defined to [sic] some case law in previous cases, yes.

DEFENSE COUNSEL: Objection as to nonresponsive, your honor.

COURT: Sustained.

Q. Is it defined within the law of Chapter 841?

A. I can't recall the specific — I think it is, yes.

Q. Well, I guess, what's your definition — or what definition of behavior — I'm sorry, of "likely" do you utilize?

A. It's probable, something that's beyond a mere possibility.

Q. And is your understanding of that also based on case law that you've reviewed?

A. Yes.

Pointing out that courts have held that "likely" is not defined in any statutes or case law, Mueller asserts that Dr. Reed improperly informed the jury that "likely" has been defined as a matter of law. *See, e.g.*, *In re Commitment of Hill*, 621 S.W.3d 336, 343 n.3 (Tex. App.—Dallas 2021, no pet.) ("Neither case law nor the statute defines 'likely' in [the SVP Act] context. ... Rather, the expert's personal definition of 'likely' goes to the weight the jury decides to give the expert's testimony.").

We disagree that this exchange renders Dr. Reed's testimony conclusory. First, the trial court sustained defense counsel's objection to Dr. Reed's statement

that "likely" is "defined to [sic] some case law in previous cases." Second, when she was asked if "likely" is defined in Chapter 841, Dr. Reed did not respond with an unequivocal answer but instead responded, "I think it is, yes." Finally, Dr. Reed was asked about her *personal* definition of "likely" — and it was this definition that was used as the basis for her opinion that Mueller suffers from a behavioral abnormality. *See, e.g.*, *In re Commitment of Riojas*, No. 04-17-00082-CV, 2017 WL 4938818, at *4 (Tex. App.—San Antonio Nov. 1, 2017, no pet.) (mem. op.) ("an expert's definition of the term 'likely' as used in the [SVP] statute goes to the weight the jury decides to give the expert's testimony"). Therefore, Dr. Reed's other testimony addressing whether "likely" has been defined in statutes or case law does not render her opinions conclusory.

Mueller also asserts that "[t]he record shows that Dr. Reed's opinion was based on neither significant experience treating sex offenders, nor statistical evidence scientifically supporting the factors she chose to feature." But, as recounted above, Dr. Reed testified that she has substantial experience evaluating sex offenders and has conducted "hundreds" of sex offender risk assessments and approximately 80-90 behavioral-abnormality evaluations. Mueller does not cite any authority to support his contention that Dr. Reed also must provide treatment to sex offenders where, as here, she was retained only to provide a clinical evaluation.

Similarly, Dr. Reed testified that she used several testing instruments to evaluate Mueller, including the Hare Psychopathy Checklist, the Static-99R, and the RSVP. These instruments regularly are used by other forensic psychologists performing similar assessments in the SPV Act context. *See, e.g.*, *In re Commitment of Ausbie*, No. 14-18-00167-CV, 2021 WL 1972407, at *4 (Tex. App.—Houston [14th Dist.] May 18, 2021, pet. denied) (mem. op.); *Throm*, 2021

16

WL 1185100, at *2. Dr. Reed's use of these instruments counters Mueller's argument that her testimony lacked supporting statistical evidence.

Finally, Mueller asserts that Dr. Reed placed undue emphasis on his "unwillingness to confess to a sexual attraction to pre-pubescent children" and his "refusal to confess" with respect to the charged offenses. But courts previously have held that minimization and denial are relevant evidence to consider with respect to the behavioral-abnormality inquiry. *See, e.g.*, *Sawyer*, 2018 WL 3372924, at *7 (concluding the expert's testimony was not conclusory, the court noted that "Sawyer denied that he was a pedophile and instead attributed his behavior to being bored and stressed"); *In re Commitment of Rogers*, No. 05-17-00010-CV, 2018 WL 360047, at *5 (Tex. App.—Dallas Jan. 11, 2018, pet. denied) (mem. op.) (concluding the expert's testimony was not conclusory, the court noted that "Rogers minimized and denied many of these incidents and blamed other people for them").

Therefore, viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that Mueller suffers from a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence. *See* Tex. Health & Safety Code Ann. § 841.003(a). Accordingly, the evidence is legally sufficient to support the jury's finding that Mueller is a sexually violent predator.

We overrule Mueller's first issue.

## III.    Factual Sufficiency

Asserting the evidence is factually insufficient to support the jury's behavioral abnormality finding, Mueller points to evidence showing that (1) his age makes him less likely to reoffend, (2) he is not a psychopath, and (3) he has

worked to improve himself.

Although the factual sufficiency review has been abandoned in criminal cases (*see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)), as an intermediate appellate court with final authority over factual sufficiency challenges in civil cases, we perform a factual sufficiency review in SVP Act cases when the issue is raised on appeal. *See In re Commitment of Harris*, 541 S.W.3d 322, 327 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Under a factual sufficiency review, we consider "whether a verdict that is supported by legally sufficient evidence nevertheless reflects a risk of injustice that would compel ordering a new trial." *Id.* (internal quotation omitted). We view all the evidence in a neutral light and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Id.*

Despite the evidence Mueller points to in support of his factual sufficiency challenge, we conclude the jury nonetheless was rationally justified in finding beyond a reasonable doubt that Mueller suffers from a behavioral abnormality as that term is defined in the SVP Act. *See* Tex. Health & Safety Code Ann. § 841.003(a)(2); *Harris*, 541 S.W.3d at 327. Specifically, the jury also heard the following:

- Mueller was arrested for engaging in sexual activity with a 13-year-old girl when he was 14 years old. According to Mueller, the girl was his friend's sister.

- In 2001, Mueller had a sexual relationship with a 14-year-old girl when he was 18 years old. Mueller said the girl was his girlfriend. The girl's parents agreed not to report the offense to law enforcement if Mueller stayed away from the girl.

- In 2005, Mueller was convicted of "carnal knowledge in the military system" stemming from a 2002 incident during which he had sex with a 15-year-old girl. Mueller was 19 years old at the time the offense occurred. Records from the offense show that Mueller admitted at the

18

time that he knew the girl's age. However, Mueller told Dr. Reed he did not know the girl's age at the time of the offense.

- As part of the military proceedings, Mueller also was convicted of "wrongfully using a government computer to receive and store sexually explicit images of [Mueller's] genitalia." Mueller admitted to sending the explicit images to girls aged 12 to 16 years. Mueller also admitted to trying to get the girls to send nude pictures of themselves to him.

- In 2012, Mueller pleaded guilty to a charge of indecency with a child involving his then-girlfriend's five-year-old daughter.

- In 2014, Mueller pleaded guilty to a charge of indecency with a child involving his then-girlfriend's six-year-old son.

- Mueller was placed on probation for these offenses. Mueller violated the terms of his probation by (1) possessing "a second phone that he wasn't turning over" to his probation officer, and (2) attending a funeral at which he had unsupervised contact with minors.

- Mueller scored 21 on the Hare Psychopathy Checklist. According to Dr. Reed, this means Mueller "had some traits of psychopathy."

- Mueller scored 5 on the Static-99R. According to Dr. Reed, this score "put[s] him in the category of above average risk for reoffending" as compared to other sex offenders.

- Dr. Reed employed the RSVP during her evaluation of Mueller and identified several factors indicative of a behavioral abnormality: (1) chronicity of sexual violence, (2) escalation of sexual violence, and (3) problems with self-awareness.

- Dr. Reed diagnosed Mueller with "rule-out pedophilic disorder" and "unspecified personality disorder with antisocial features." Dr. Reed opined that Mueller has a "behavioral abnormality" as necessary to warrant commitment under the SVP Act

Against this backdrop, the evidence Mueller points to in support of his second issue does not "reflect[] a risk of injustice that would compel ordering a new trial" with respect to the jury's behavioral abnormality finding. *See Harris*, 541 S.W.3d at 327. Therefore, factually sufficient evidence supports the jury's behavioral abnormality finding. *See* Tex. Health & Safety Code Ann. § 841.003(a)(1).

We overrule Mueller's second issue.

## IV.  Mueller's Requested Jury Instruction

In his third issue, Mueller asserts the trial court erred by refusing his requested jury instruction, which read as follows:

> All persons are presumed not to be a sexually violent predator and no person may be determined to be a sexually violent predator unless the State proves each element in its cause of action beyond a reasonable doubt.  The fact that [Mueller] has been alleged to be a sexually violent predator by the State of Texas gives rise to no inference of him being a sexually violent predator at trial.

We review a trial court's refusal to submit a jury instruction for an abuse of discretion.  *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012); *see, e.g.*, *In re Commitment of Williams*, 539 S.W.3d 429, 444-46 (Tex. App.—Houston [1st Dist.] 2017, no pet.).  "A trial court may refuse to give a requested instruction or definition that is not necessary to enable the jury to render a verdict, even if the instruction or definition is a correct statement of law."  *In re Commitment of Stuteville*, 463 S.W.3d 543, 554 (Tex. App.—Houston [1st Dist.] 2015, pet. denied).  We will not reverse a judgment for charge error unless the error probably caused the rendition of an improper judgment or probably prevented the appellant from properly presenting his case on appeal.  *Thota*, 366 S.W.3d at 687; *Williams*, 539 S.W.3d at 444.

Here, because the charge submitted to the jury included instructions substantially similar to those requested by Mueller, the trial court did not abuse its discretion by refusing Mueller's request.  Specifically, the charge instructed the jury as follows:

> The State has the burden of proof in this case.  This means that the State must prove each element of its cause of action beyond a reasonable doubt, and the burden never shifts to [Mueller] to prove

20

that he is not a sexually violent predator.

> A "yes" answer must be based on a belief beyond a reasonable doubt. The burden of proof in this case rests solely on the [State] and the burden never shifts to [Mueller] to prove that he is not a sexually violent predator. This means the [State] must prove each element of its cause of action beyond a reasonable doubt. If you do not find beyond a reasonable doubt that the evidence supports a "yes" answer, then answer "no."

These instructions provided the jury with substantially the same information as that requested by Mueller's instruction: that the State must prove each element of its case beyond a reasonable doubt and, if it cannot, the jury cannot find that Mueller is a sexually violent predator. Therefore, the trial court did not abuse its discretion by denying Mueller's requested instruction. *See Thota*, 366 S.W.3d at 687.

We overrule Mueller's third issue.

## CONCLUSION

We affirm the trial court's November 8, 2022 Order of Commitment.

/s/    Meagan Hassan
        Justice

Panel consists of Justices Hassan, Poissant, and Wilson.

21